**K–MART CORPORATION, Appellant,**

v.

**Terri Lynn ARMSTRONG, Appellee.**

No. 07–96–0445–CV.

Court of Appeals of Texas,
Amarillo.

April 17, 1997.

Rehearing Overruled May 20, 1997.

Daniel W. Burrows, Peterson, Farris, Doores & Jones, Amarillo, for appellant.

Timothy G. Pirtle, McLaughlin & Pirtle, Amarillo, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Justice.

In one point, appellant K–Mart contends the trial court erred in failing to grant it a new trial after it had rendered a default judgment in favor of appellee Terri Lynn Armstrong. Agreeing, we reverse the judgment of the trial court.

On September 27, 1995, appellee was shopping in a K–Mart store in Amarillo when boxes containing infant car seats fell or were knocked from a shelf and struck her. Seeking recovery for personal injuries to her neck and back and for bruises and shock to her nervous system, appellee filed this suit against K–Mart and an unknown employee on June 24, 1996. The citation, petition and discovery requests were served on K–Mart's registered agent, C.T. Corporation (C.T.), by registered mail received July 29, 1996. These documents were forwarded to K–Mart's corporate headquarters in Michigan and were received there on July 31, 1996.

At K–Mart's Michigan headquarters, its public liability attorney Stephen Petronio reviewed the documents and directed that they be forwarded to IHDS–Texas, a claims management company in Houston. On August 5, 1996, Petronio drafted a letter to IHDS suggesting that Amarillo attorney Dan Burrows be retained to defend the suit. He also requested that IHDS acknowledge receipt of the documents by signing and returning a copy of the letter. Linda Collins, a secretary working in K–Mart's liability department asserted, as was her practice when forwarding lawsuits, she mailed the letter and documents to IHDS the same day the letter was prepared.

IHDS did not receive the letter or the documents. As a result it did not acknowledge receipt of Petronio's letter and did not contact an attorney to file an answer to the suit. On August 30, 1996, appellee non-suited the employee and the trial court rendered a default judgment against K–Mart in the amount of $765,533.76 in damages, and prejudgment interest of $26,000. This, of course, is the judgment now on appeal. K–Mart received notice of the judgment on September 16, 1996 from C.T. It immediately contacted IHDS, which reported that it did not find any evidence that it ever received the suit documents and instructions.

On September 17, 1996, K–Mart filed an answer to the suit and, on September 20, filed its motion to set aside the default judgment and grant a new trial. With the motion, K–Mart attached several affidavits, including those of Petronio, Tony Dolenski, Fred Manning and Sandra Eggleston. In his affidavit, and in addition to reciting the steps he took, Petronio averred that after the documents were forwarded to IHDS, he assumed the suit "would be answered and defended in accordance with customary instructions and procedures." Tony Dolenski was the person at IHDS who makes assignments for all claims handled by that office and he

swore that he never received any documents concerning this suit.

Fred Manning averred he was the manager of the K–Mart store where the events giving rise to the suit took place. He stated that after hearing a loud sound in the store, he went to the infant department and saw appellee standing near a shopping cart, and he also saw several infant car seats on the floor of the aisle. Appellee told Manning that she was "okay" but that her neck was sore. She continued her shopping. Eggleston swore that she was stacking the boxes of infant seats at the time they fell. While returning with more boxes to place on the shelf, she saw the boxes fall. She saw one box hit appellee's arm but did not see any boxes hit appellee's neck or shoulders.

Although the trial court conducted a hearing on K–Mart's motion on November 12, 1996, it did not rule on the motion, which was overruled by operation of law on November 13, 1996. Hence, this appeal.

█ The disposition of a motion for new trial is within the discretion of a trial court provided that discretion is exercised with reference to some guiding rule or principle. *Strackbein v. Prewitt,*  671 S.W.2d 37, 38 (1984). In considering attempts to set aside default judgments, the guiding principles are those set out in the hoary case of *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939). In that case, the court explicated:

> A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock,* 133 S.W.2d at 126. It is against this standard that we must measure the facts before us.

## Conscious Indifference

█ Under the *Craddock* standard, the first element that K–Mart needed to show is that its failure to answer before judgment was not intentional or the result of conscious indifference but was due to a mistake or accident. With regard to the first prong of the *Craddock* tripartite test, our courts have not established any clear cut criterion to aid in distinguishing an accidental or mistaken failure to answer from one that is intentional or the result of conscious indifference. They have, rather, opted to let each case depend upon its own facts. Thus, in making our determination, we must look to the knowledge and acts of the defendant. *Strackbein,* 671 S.W.2d at 39. Perusal of the cases dealing with the question clearly demonstrates that in their consideration of relevant facts, the courts have interpreted the first prong liberally in favor of the movant. *Gotcher v. Barnett,* 757 S.W.2d 398, 401 (Tex.App.—Houston [14th Dist.] 1988, no writ). It is also settled law in this state that negligence alone will not preclude setting aside a default judgment. *Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex.1966); *Ferguson & Co. v. Roll,* 776 S.W.2d 692, 697 (Tex.App.—Dallas 1989, no writ); *Gotcher,* 757 S.W.2d at 402; Pohl and Hittner, *Judgment By Default in Texas,* 37 SW. L.J. 421, 433. Indeed, as a result of the in-depth analysis given default judgments in the Pohl and Hittner article, they point out that "[i]n fact, the defendant's burden of demonstrating the accidental or mistaken nature of his failure to answer may often result in an admission of negligence." *Pohl and Hittner,* 37 SW. L.J. at 443. Thus, some excuse, even though not necessarily a good one, seems to be enough under the *Craddock* rationale to warrant setting aside a default judgment, provided the defendant's failure to answer was, in fact, accidental. *Craddock,* 133 S.W.2d at 125; *Ferguson,* 776 S.W.2d at 695.

It is also the rule that if the factual assertions in the defendant's affidavits are not controverted, a defendant satisfies his or her burden if the affidavits set forth facts that, if true, negate intent or conscious indifference. *Old Republic Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994). Here, appellee has not

directly controverted the facts set out in K–Mart's affidavits but has opted to proffer additional facts through deposition testimony of K–Mart's employees and agents.

■ The gist of K–Mart's argument supporting its quest for a new trial is the uncontroverted evidence that it forwarded the suit documents through the U.S. Mail is sufficient to show that it was not consciously indifferent to the suit and the necessity for filing an answer. It additionally posits that the evidence that IHDS did not receive the documents indicates they were lost in the mail and is a sufficient excuse for its failure to answer.

In support of its position that K–Mart's conduct amounted to conscious indifference, appellee primarily relies upon *Baker v. Kunzman*, 873 S.W.2d 753 (Tex.App.—Tyler 1994, writ denied). That reliance warrants a close look at the facts in that case which were uncontroverted. In that case, the defendant, appellant in the appeal, testified that he forwarded the suit papers to his attorney, who, in turn, testified that he never received them. The appellant also testified that he never talked to his attorney from the time he received the papers until he received notice of the default judgment. Counsel for appellant, however, testified that the appellant called him when he received service and he told the appellant to bring the suit papers to his office and, after not hearing from appellant, he called and left messages on appellant's answering machine for appellant to contact him. The appellate court reformed the default judgment, and as reformed, affirmed it. In explanation of its affirmance of the denial of a new trial, the court explained the trial court had two versions of the appellant's conduct before it. First, it noted, the trial court could believe that the appellant received service and without talking to his attorney, forwarded the suit papers to him and never inquired as to the status of the answer. Secondly, it commented, the trial court could have believed that the appellant's counsel told him to bring the papers to him and, when the appellant did not do so, tried to call him. Thus, the appellate court concluded, under either scenario, the trial court could reasonably believe the appellant was consciously indifferent or intentionally disregarded the need to answer the suit. *Id.* at 755. Neither of those scenarios are present in this case.

Appellee also suggests that factual recitations in Petronio's deposition support the denial of a new trial in this case. Although he was K–Mart's only attorney responsible for the case, Petronio did not record the date when an answer would be due and he did not know if any other of K–Mart's employees did so. His testimony also showed that K–Mart used a computer system called K–Mart Matters Management System to record events relevant to pending claims and suits. One piece of information recorded in the system would be acknowledgments such as those that might be received from IHDS. Parenthetically, although Petronio admitted he had access to the system, he denied he should have checked to see if the acknowledgment letter for IHDS had been received. Petronio's secretary stated that she does not monitor whether acknowledgment letters are returned.[1]

We do not agree that K–Mart's use of the U.S. Mail to forward the suit papers is, in itself, evidence of conscious indifference. For example, in *Ferguson v. Roll*, the defendant's failure to answer was due to the loss of the suit papers in an interoffice mail system which, the court held, was sufficient to show the failure to answer was the result of an accident or mistake and not the result of conscious indifference or an intentional act. 776 S.W.2d at 698. *See also State Farm Life Ins. Co. v. Mosharaf*, 794 S.W.2d 578, 582 (Tex.App.—Houston [1st. Dist.] 1990, writ denied) (citation sent in interoffice mail mistakenly filed before delivery to intended recipient). Appellee does not contend there is any functional difference between an interoffice mail system and the U.S. Mail system. Thus, the sole difference, for our purposes, between the facts of that case and those before the *Ferguson* court is that the em-

---

1. Her specific testimony was, "I'm sure he has reports or something that he refers to to tell him who has not acknowledged it, you know, but other than that, I do not deal with that aspect of it at all."

ployee who chose to use a mail system is an attorney. There is no evidence that the U.S. Mail handles letters from attorneys any differently from those mailed by anyone else. We have found no authority, nor have we been cited authority, holding attorneys to any higher duty in selecting methods of transmission than any other person. Without evidence of such disparate treatment, we agree with the *Ferguson* court that the selection of such a method for transmitting suit papers, even by an attorney, is not sufficient to show conscious indifference or an intentional act of such a nature as to prevent the granting of a new trial.

Although appellee does not voice such a specific argument, the thrust of her argument appears to be that the evidence of conscious indifference is not so much what Petronio actually did, but is, rather, what he failed to do, *i.e.*, confirm the suit papers were actually received in Houston. However, such failures to follow up are virtually a defining characteristic of no-answer default judgments. That fact has not prevented the courts from finding that such failures are the result of accident or mistake, not conscious indifference. *See, e.g., Strackbein v. Prewitt*, 671 S.W.2d at 38; *Craddock*, 133 S.W.2d at 126; *Mosharaf*, 794 S.W.2d at 582; *Ferguson*, 776 S.W.2d at 695; *Dallas Heating Co., Inc. v. Pardee*, 561 S.W.2d 16, 19 (Tex.Civ. App.—Dallas 1977, writ ref'd n.r.e.). The practical effect of appellee's argument that "the loss of the lawsuit papers was the cause of the default judgment and was avoidable by the exercise of due diligence" would be to have us apply a negligence standard to determine conscious indifference. However persuasive that suggestion might be in an abstract sense, that standard has been repeatedly rejected by the courts. *Ivy v. Carrell*, 407 S.W.2d at 213; *Ferguson*, 776 S.W.2d at 697; *Dallas Heating*, 561 S.W.2d at 19; *Farley v. Clark Equip. Co.*, 484 S.W.2d 142, 146 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.).

Under this record, we must hold that K–Mart's motion and supporting affidavits sufficiently meet the requisites of the first element of the *Craddock* test.

### Meritorious Defense

In determining the meritorious defense element, we look to the facts alleged in the movant's motion and supporting affidavits, regardless of whether those facts are controverted. *Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 270 (Tex.1994). A movant's motion need only set up, but not prove, a meritorious defense. *Ivy*, 407 S.W.2d at 214. A meritorious defense is one that, if proved, would cause a different result, including findings on damages, on retrial. *Ferguson*, 776 S.W.2d at 698. The mere allegation that the movant has a meritorious defense without also alleging supporting facts is insufficient. *Ivy*, 407 S.W.2d at 214.

In their affidavits, K–Mart's store manager and employee averred that the boxes fell due to failure of the shelf upon which they were placed rather than the manner in which they had been placed on the shelf. They also claimed that only one box struck appellee on the arm and that appellee acknowledged she was all right and continued shopping at the time. Viewed in the light by which we must view them, these alleged facts are sufficient to set up a meritorious defense to K–Mart's claim as to the cause of any injury and as to the extent of damages actually suffered by her as a result of the occurrence. K–Mart has thus met the second prong of the *Craddock* test.

### No Delay or Injury

The third prong of the *Craddock* test is that the motion for new trial be filed at a time when the granting of the motion will occasion no delay or otherwise injure plaintiff. *Craddock*, 133 S.W.2d at 126. Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff. *Evans*, 889 S.W.2d at 270.

In this case, the motion for new trial was ruled on less than three months after the default judgment was rendered. K–Mart offered to reimburse appellee for expenses incurred in obtaining the judgment. Moreover, appellee does not contend the granting of a new trial would cause undue delay or

injury to her. K–Mart has satisfied the third prong of the *Craddock* test.

In sum, we find K–Mart has met all three prongs of the *Craddock* tripartite test; thus, we must, and do hold that K–Mart has established its entitlement to a new trial. Accordingly, we sustain K–Mart's point of error, reverse the judgment of the trial court and remand the cause to the trial court for further proceedings consistent with this opinion.