Mishawndria FREEMAN, Appellant,

v.

Annie PEVEHOUSE, Appellee.

No. 10–01–114–CV.

Court of Appeals of Texas, Waco.

May 29, 2002.

---

3. Because of this disposition, we do not address N.L.I.'s other issues.

David Johnson, Keith Dorsett, Fulbright & Winniford, P.C., Waco, for appellant.

Michael L. Scanes, Naman, Howell, Smith & Lee, P.C., Waco, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Austin, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## LEAD OPINION

TOM GRAY, Justice.

Annie Pevehouse was involved in an automobile accident on September 25, 1998, with Mishawndria Freeman, an insured of Allstate Insurance Company. After negotiations to resolve the dispute for over one year failed, Pevehouse filed a personal injury suit against Freeman on September 21, 2000. Freeman was served on November 15, 2000. Freeman failed to timely file an answer. On January 11, 2001, Pevehouse appeared at a default judgment hearing, offered evidence, and obtained a default judgment. Freeman timely filed a motion for new trial. After a hearing the motion was denied by operation of law. Freeman brought this appeal contending the trial court abused its discretion in denying its motion for new trial.

### MOTION FOR NEW TRIAL—DEFAULT JUDGMENT

In her only issue, Freeman claims the trial court erred in denying her motion for new trial because she met the three requirements for a new trial established by the Texas Supreme Court. *See Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939). Freeman bears the burden of proving that Freeman's and Allstate's failure to file the answer was not intentional or the result of conscious indifference, but due to a mistake or accident. *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *P & H Transportation, Inc. v. Robinson*, 930 S.W.2d 857, 861 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Memorial Hosp. Sys. v. Fisher Insurance Agency, Inc.*, 835 S.W.2d 645, 652 (Tex.App.-Houston [14th Dist.] 1992, no writ). Freeman cannot be relieved from a default judgment on the ground that she turned the petition over to Allstate and relied upon Allstate to file an answer without showing why Allstate failed to answer. *Memorial Hosp. Sys.*, 835 S.W.2d at 652.

Pevehouse does not challenge that Freeman, individually, did not fail to answer intentionally or with conscious indifference, nor that Freeman offered evidence to support the second and third elements of the *Craddock* test for both Freeman and Allstate. Therefore, the scope of the issue is limited to the first prong of *Craddock*, specifically whether Allstate's failure to timely answer was not intentional or the result of conscious indifference, but was due to a mistake or an accident. *Craddock*, 133 S.W.2d at 126.

### APPLICABLE LAW

A motion for new trial is addressed to the trial court's discretion, and the court's ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778 (Tex.1987); *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984). The prerequisites for granting a motion to set aside a trial court's default judgment equally ap-

ply to a no-answer and a post-answer default judgment. *Cliff,* 724 S.W.2d at 779; *Grissom v. Watson,* 704 S.W.2d 325 (Tex. 1986). In *Craddock,* the Supreme Court set forth the guiding rule or principle which trial courts must follow in determining whether to grant a motion for new trial:

A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Cliff,* 724 S.W.2d at 779; *Craddock,* 133 S.W.2d at 126.

■ The defaulting defendant has the burden of proving all three elements of the *Craddock* test are met before a trial court is required to grant a motion for new trial. *Sunrizon Homes, Inc. v. Fuller,* 747 S.W.2d 530 (Tex.App.-San Antonio 1988, pet. rehear'g denied). A trial court abuses its discretion by not granting a new trial when all three elements of the *Craddock* test are met. *Director, State Emp. Wkrs.' Comp. v. Evans,* 889 S.W.2d 266, 268 (Tex. 1994).

## INTENT OR CONSCIOUS INDIFFERENCE

■ In determining whether the failure to answer was due to intentional conduct or conscious indifference we must look to the knowledge and acts of the defendant as shown by all the evidence contained in the record before the court. *Id.* at 269; *Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex.1984). If the factual assertions in the defendant's affidavits are not controverted by the plaintiff, the defendant satisfies his burden if his affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant. *Strackbein,* 671 S.W.2d at 38–39. However, conclusory allegations are insufficient. *Holt Atherton Industries, Inc. v. Heine,* 835 S.W.2d 80, 82 (Tex.1992); *Folsom Investments, Inc. v. Troutz,* 632 S.W.2d 872, 875 (Tex.App.-Ft. Worth 1982, writ ref'd).

■ To determine if the defendant's factual assertions are controverted, the court looks to all the evidence in the record. *Director, State Emp. Wrks.' Comp. v. Evans,* 889 S.W.2d 266, 269 (Tex.1994). When the non-movant presents evidence at the hearing for new trial tending to show intentional or consciously indifferent conduct, it becomes a question for the trial court to determine. *Young v. Kirsch,* 814 S.W.2d 77, 80–81 (Tex.App.-San Antonio 1991, pet. rehear'g denied). *Jackson v. Mares,* 802 S.W.2d 48, 50 (Tex.App.-Corpus Christi 1990, writ denied).

## INFERENCES

■ The Supreme Court of Texas has held that the trier of fact may draw inferences from evidence presented, but only reasonable and logical ones. *Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 392 (Tex.1997). An ultimate fact may be established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts in the case. *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995). But an ultimate fact may not be inferred by the trier of fact if the evidence is only "meager circumstantial evidence" which could give rise to any number of inferences, none more probable than another. *Hammerly Oaks,* 958 S.W.2d 387, 392 (quoting *Litton Indus. Prods. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984)). If meager circumstantial evidence gives rise to inferences which are

equally consistent with two facts and nothing shows that one inference is more probable than the other, neither fact can be inferred. *Litton Indus. Prods. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984); *Texas Sling Co. v. Emanuel,* 431 S.W.2d 538 (Tex.1968); *Continental Cas. Co. v. Fountain,* 257 S.W.2d 338 (Tex.Civ.App.-Dallas 1953, writ ref'd). There must be more than a scintilla of circumstantial evidence on which to reasonably infer a fact. *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995). And "[e]vidence is merely a scintilla when it is so weak as to do nothing more than create a mere surmise or suspicion of a fact." *Jacobs–Cathey Co. v. Cockrum,* 947 S.W.2d 288, 293 (Tex. App.-Waco 1997, pet. rehear'g denied).

### EVIDENCE IN THE RECORD

#### Freeman

Freeman stated in her affidavit that she was served with a citation and petition on the night of November 16, 2000. The next day Freeman called her insurance agent, Richard Duncan, with Mexia Insurance Service. On the afternoon of November 17, 2000, Freeman went to Duncan's office. After looking at the lawsuit papers Duncan faxed them to Allstate in Austin, Texas.

Freeman tried to reach Allstate representative Jeff Hill by phone several times during the following week, but never could. Freeman finally went through the switchboard and asked to be connected with Hill's boss. Freeman spoke with an individual who indicated they had the lawsuit papers, she shouldn't worry about it, and they were handling it. Freeman remembered specifically mentioning the twenty day period in which to file an answer. Freeman did not hear about the lawsuit again until she was told a default judgment had been taken against her. Freeman's affidavit concludes with the statement; "[t]he failure to timely file an answer was

not intentional or the result of conscious indifference on my part, but must have been due to mistake or accident on the part of Allstate Insurance Company."

#### Shivers

Sherry Shivers stated in her affidavit that she is employed by Mexia Insurance Service in Mexia, Texas, that on or about November 17, 2000, Freeman went into the office with the citation and petition for this case and that Freeman indicated she had been served with the papers the night before. Shivers stated: "we faxed the papers to Allstate Insurance Company in Austin, Texas on November 17, 2000 for Ms. Freeman. There was no error in the facsimile transmission."

#### Medellin

Evaristo Medellin stated in his affidavit that he is employed by Allstate in Austin as a Senior Claims Service Adjuster. This claim was originally received by Allstate in October, 1998. Medellin began working on the file regarding this case on or about August 30, 2000. Medellin spoke with Simms, Pevehouse's first attorney, on or about September 6, 2000. He further states that an Allstate representative tried to return calls of the insured on November 30, December 1, and December 4, but was not able to reach her. He then received a letter dated December 13, 2000 from Scanes, Pevehouse's second attorney, indicating Scanes would take a default judgment on December 20, 2000. Medellin states that "when I received the letter, I called Mr. Scanes and was informed that he had already taken default."

Medellin states he spoke with Freeman and Freeman's agent, and from those conversations he learned the agent had called Allstate and been told to fax the suit papers. Freeman's agent indicated to Medellin that she had faxed the suit papers. Medellin has not been able to find a record or document indicating that Allstate re-

ceived the fax. Medellin also states in his affidavit that Allstate, in Austin, Texas, has two buildings. Building One contains employees who report to the Austin office for Allstate, while Building Two reports to San Antonio. Freeman's agent called an Allstate representative in Building One and Medellin is in Building Two. Medellin's affidavit concludes with the statement; "Allstate's failure to timely retain defense counsel for purposes of filing an answer on the insured's behalf was not intentional or the result of conscious indifference, but was due to mistake or accident."

*Simms*

At the hearing, Ricky Simms testified that after the automobile accident in September of 1998, Pevehouse retained Simms to represent her. Simms attempted to resolve the case with Freeman's insurance carrier, Allstate Insurance Company. Simms had contact over a year's period of time with several different adjusters at Allstate. Medellin was the last Allstate adjuster with whom Simms had contact regarding this case. Simms had both correspondence and telephone conversations with Medellin regarding medical records, settlement amounts, and the statute of limitation in this case.

During one conversation concerning settlement, Simms told Medellin that if they could not get together on a settlement amount Simms would have to get a suit filed because the statute of limitation was about to run. After that conversation Simms received a letter from Medellin dated September 6, 2000, offering a settlement amount and requesting that Simms advise Allstate of Pevehouse's decision. The letter of September 6, 2000 was Simms' last communication with Allstate. Because Simms was unable to negotiate a settlement with Medellin he referred the case to Mike Scanes in September 2000 to file suit and try the case if necessary.

*Scanes*

Scanes testified that on either September 20 or 21, 2000, he called and left a voice mail message for Medellin indicating Scanes represented Pevehouse and how Medellin could reach him. Scanes believes he told Medellin in the voice mail message he was about to file suit. Scanes did not receive a return call. Scanes filed suit on behalf of Pevehouse on September 21, 2000 and Freeman was served with citation and petition in November, 2000. Scanes again called Medellin in December 2000 and is sure he left the message that he had filed suit and that no answer had been filed. Scanes testified that the answering machine greeting indicated the number dialed was for Medellin, the caller should leave a message, and Medellin would get back to the caller. Scanes did not receive a return call to this message either.

Scanes testified that he sent a letter to Medellin dated December 13, 2000. The letter stated that Scanes' firm represented Pevehouse, and that Scanes had tried unsuccessfully to reach Medellin by telephone on two occasions. The letter further stated that suit was filed in this matter against Allstate's insured on September 21, 2000. Scanes enclosed a copy of the petition and citation with the letter. Scanes also stated in the letter that the answer date for Freeman was December 11, 2000, that no answer had been filed, and that Freeman was now in default. The letter continued that Medellin had until December 20, 2000 to file an answer or Scanes would obtain a default judgment against Freeman. Scanes did not receive a response to his letter in the next three or four weeks from Medellin or anyone else at Allstate. Scanes then arranged for a default judgment to be taken on January 11, 2001.

UNCONTROVERTED FACTS ANALYSIS

■ The evidence in this record on the issue consists of Freeman's motion for new trial affidavits from Freeman, Shivers, and Medellin, and oral testimony from Simms and Scanes. Under *Strackbein*, the burden to set forth facts that negate intentional or consciously indifferent conduct because of a mistake or accident is on the defendant. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex.1984). And while it is true that losing or misplacing a citation or petition is a valid excuse for a failure to answer, there must be competent proof of the excuse to negate intentional conduct or conscious indifference. *BancTEXAS McKinney v. Desalination Systems*, Inc., 847 S.W.2d 301, 302 (Tex. App–Dallas [5th Dist.] 1992, no pet.).

The *Craddock* court held evidence of a mistake precluded the conclusion the failure to answer was an intentional act. *Bank One, Texas v. Moody*, 830 S.W.2d 81, 83 (Tex.1992); *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 125–126 (1939). In *Craddock*, the defendant alleged detailed events that led to the citation getting mixed with general mail instead of the important mail. The allegations included the specific path the letter took from person to person within the company and exactly where and how the mistake occurred that prevented the filing of a timely answer. *Id.* at 124–125.

In *Director, State Employees Workers' Compensation Division (Director)*, the State offered an affidavit from the attorney who failed to appear at trial. The affidavit contained specific factual allegations that the attorney's predecessor misdated the trial date on the calendar and conveyed the wrong information to the new attorney who believed the trial date to be May 28 instead of April 22. *Director, State Emp. Wkrs.' Comp. v. Evans*, 889 S.W.2d 266, 269 (Tex.1994).

■ In *Strackbein*, affidavits of the persons actually served accompanied the motions for new trial and precisely described how the citations were misplaced. *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex.1984). However, in *BancTEXAS*, where the bank's senior vice president provided an affidavit in support of the bank's motion for a new trial instead of the bank president who was actually served with the writ of garnishment, the Dallas Court of Appeals held that *BancTEXAS* did not establish by competent evidence that its conduct was not intentional or consciously indifferent. *BancTEXAS McKinney v. Desalination Systems, Inc.*, 847 S.W.2d 301, 302–303 (Tex.App.-Dallas [5th Dist.] 1992, no pet.). Mistake or accident was not proved because there was no affidavit from the bank president or anyone else who actually handled the citation explaining how the citation was lost or where in the chain of communication a breakdown occurred that led to the failure to answer the citation. *Id.; Nichols v. TMJ Co.*, 742 S.W.2d 828, 831 (Tex.App.-Dallas 1987, no writ) (although transportation problems have been held to establish the absence of intentional or consciously indifferent conduct, mere allegations of "car trouble," without specific facts or detailed description of events, was insufficient to grant a motion for new trial); *Motiograph, Inc. v. W.D. Matthews*, 555 S.W.2d 196, 197 (Tex. Civ.App.-Dallas 1977, writ ref'd n.r.e.) (assertion that the citation was "inadvertently misplaced" after service by employee merely summarized an undisclosed chain of events and did not set forth any explanatory facts that would support vacation of the default judgment).

No oral testimony was put in evidence by Freeman at the hearing for new trial. So we look to the affidavits presented by Freeman with her motion in order to determine if facts are set forth that prove

intentional or consciously indifferent conduct by Allstate was negated by mistake or accident. *Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex.1984).

Medellin's affidavit states he was unable to find a record or document indicating that Allstate received the fax of suit papers from Freeman's agent. Shiver's affidavit states, "we faxed the papers to Allstate Insurance Company in Austin, Texas on November 17, 2000 for Ms. Freeman. There was no error in the facsimile transmission." Freeman's affidavit states that she called the switchboard at Allstate and asked to be connected to Hill's boss. She then spoke with an individual who indicated they had the lawsuit papers, she shouldn't worry about it, and they were handling it. Shiver's and Freeman's affidavits contradict Medellin's affidavit regarding Allstate's receipt of the suit papers.

There is no evidence other than Medellin's uncorroborated statement that he was unable to find a record or document indicating that Allstate received the fax of suit papers. Freeman presents no evidence that the suit papers were faxed to a wrong number, or even that someone at Allstate "believed" the suit papers were transmitted to a wrong number.[1]

Medellin's affidavit then states that Allstate has two buildings in Austin and that the fax was sent to Building One when he works in Building Two. Medellin does not state in his affidavit that it was a mistake or accident to send the fax to Building One. Freeman presents no evidence that the suit papers were lost in transfer between the buildings or even what is believed to have happened to the suit papers.

There are no other statements in the affidavits that concern the first prong of the *Craddock* test. As in *BancTEXAS,* Freeman offers no evidence from anyone who actually handled the citation and petition at Allstate explaining how they were lost or where in the chain of communication a breakdown occurred that led to the failure to answer the citation. *BancTEXAS McKinney v. Desalination Systems, Inc.,* 847 S.W.2d 301, 302 (Tex.App.-Dallas [5th Dist.] 1992, no pet.).

Freeman offers no explanation of the nature of the mistake, not even a mistaken belief by anyone at Allstate that someone else was taking care of the answer, or as in *Old Republic Insurance Co.,* that to the "best of someone's knowledge" the suit papers were lost, misplaced, misfiled, or misdirected. *Old Republic Insurance Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994).

The defaulting defendant bears the burden of setting forth facts that prove all three elements of the *Craddock* test are met. *Sunrizon Homes v. Fuller,* 747 S.W.2d 530 (Tex.App.-San Antonio 1988, pet. rehear'g denied). The essential teaching of each of the cases cited is that the defendant must explain under oath what mistake or accident caused the failure to timely file an answer. Proof positive of the mistake or accident is not required; nothing more than the declarant's statement of belief as to what caused the failure to timely file an answer is competent proof. In this case, Medellin's affirmative allegations, without more to explain how or why it was a mistake or accident to send the fax to Building One instead of Building Two, is not enough to support his conclusory statement that "Allstate's failure to timely retain defense counsel for purposes

---

1. *Director, State Emp. Wrks'. Com. v. Evans,* 889 S.W.2d 266, 269 (Tex.1994) where an attorney stated in her affidavit she believed the trial date to be set for May 28 not April 22 because her predecessor misdated the calendar and conveyed the wrong information to her.

of filing an answer on the insured's behalf was not intentional or the result of conscious indifference, but was due to mistake or accident."

From the factual allegations in Freeman's affidavits it cannot be said that the only logical inference would be the insurance company's failure to answer was not the result of intent or conscious indifference, but was due to mistake or accident. Because the burden to establish the reason for the failure to file an answer is on Freeman, and finding her evidence comes up short, the judgment is affirmed.

### CONTROVERTED FACTS ANALYSIS—AN ALTERNATIVE HOLDING

Freeman's evidence falls short of that necessary to establish the prima facie case necessary under *Craddock* to reverse a default judgment based on the trial court's failure to grant a new trial. In reaching this holding it was unnecessary to consider evidence offered by Pevehouse in an effort to show Allstate acted with conscious indifference. To facilitate review if a petition for review is filed, and if the Supreme Court disagrees with this holding and determines Freeman's evidence is sufficient, taken alone, to meet the *Craddock* test, judicial economy requires an alternative analysis. Under this alternative analysis, the inferences that could arguably be drawn from all the evidence presented in connection with the motion for new trail must be analyzed.

In determining if the defendant's factual assertions are controverted, the court looks to all the evidence in the record. *Director, State Emp. Wkrs'. Comp. v. Evans*, 889 S.W.2d 266, 269 (Tex.1994). However, conclusory allegations are insufficient. *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex.1992); *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex.App.-Ft. Worth 1982, writ ref'd n.r.e.). The Supreme Court

does not require that the defendant's affidavits be controverted only by counter affidavits, or that the trial court ignore any other evidence. *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex.1984); *Young v. Kirsch*, 814 S.W.2d 77, 80 (Tex.App.-San Antonio 1991, pet. rehear'g denied).

We look to see if the trial judge abused his discretion in denying Freeman's motion for new trial in view of "the record before him at that time," which in this case, includes Freeman's affidavits with her motion for new trial and the testimony of Simms and Scanes. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). When evidence is introduced at a hearing, the issues in the defendant's affidavits become fact questions for the trial court to resolve. *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex.App.-Corpus Christi 1990, writ denied). As the fact-finder at a hearing on a motion for new trial, the trial court has the duty of determining the facts surrounding the default judgment, and it is within the trial court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony. *Jackson*, 802 S.W.2d at 51; *Royal Zenith Corp. v. Martinez*, 695 S.W.2d 327, 330 (Tex.App.-Waco 1985, no writ).

To determine whether the failure to appear was due to intentional conduct or conscious indifference we must look to the knowledge and acts of the defendant as contained in the record before the court. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex.1984). The knowledge and acts of the defendant may relate to such evidence as how many times and in what ways a defendant was notified of the need to take some action, the defendant's familiarity of and experience with the legal system, and the length of time which lapsed before the default judgment was finally entered. *Young v. Kirsch*, 814 S.W.2d 77, 81 (Tex.

App.-San Antonio 1991, pet. rehear'g denied).

Unlike *Director*, where the plaintiff's affidavits did not controvert any facts related to conscious indifference, Pevehouse presented oral testimony that directly controverted the implication from Medellin's affidavit that he was unaware of a need to file an answer. *Director, State Emp. Wrks.' Comp. v. Evans*, 889 S.W.2d 266, 269 (Tex.1994).

During oral testimony at the hearing for new trial, uncontroverted evidence was given by Scanes that he left two voice mail messages on Medellin's answering machine. At least one of these messages contained specific information about filing and service of the suit and the need for an answer to be filed.

Scanes also testified he sent a letter dated December 13, 2000 with a copy of the citation and petition to Medellin. Medellin stated in his affidavit that "[w]hen I received the letter, I called Mr. Scanes and was informed that he had already taken a default." Scanes testified that he believed the letter would have been received by Mr. Medellin prior to January 11, 2001, the date of the default judgment.

■ This evidence puts the issue of conscious indifference in controversy for the trial court to determine. *Young v. Kirsch*, 814 S.W.2d 77, 80–1 (Tex.App.-San Antonio 1991, pet. rehear'g denied); *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex.App.-Corpus Christi 1990, writ denied). A trial court can reasonably believe, based on contradictory evidence, that there was intentional or consciously indifferent conduct on the part of a defendant. *K–Mart Corp. v. Armstrong*, 944 S.W.2d 59, 62 (Tex.App.-Amarillo 1997, pet. rehear'g denied); *Baker v. Kunzman*, 873 S.W.2d 753 (Tex.App.-Tyler 1994, pet. rehear'g denied).

In *Baker*, the trial court was presented with two versions of appellant's actions between the time he received the service of process and the notice of default judgment. *Baker v. Kunzman*, 873 S.W.2d 753, 755 (Tex.App.-Tyler 1994, pet. rehear'g denied). The appellant's own testimony raised and did not negate the inference of intentional disregard or conscious indifference by appellant. *Id.*

Shivers and Freeman stated in their affidavits that the suit papers were faxed to Allstate in Austin and that no error was received for the fax transmission. In her affidavit, Freeman said she called Allstate's switch board and asked for Hill's boss and then spoke to someone who told her they had the papers, not to worry, they were taking care of it. Medellin states in his affidavit he could not find a paper trail of Allstate receiving the fax. As in *Baker*, these two versions of events can be seen to raise an inference of intentional or consciously indifferent conduct by Allstate. *Id.*

If it could be argued that a reasonable inference to be drawn from the evidence available to Freeman is that Allstate's failure to timely file an answer was not due to intent or conscious indifference, but to mistake or accident, then the same evidence available to Pevehouse could be used to draw a reasonable inference that Allstate acted with conscious indifference when Allstate failed to timely file an answer on Freeman's behalf. In which case, because there are controverting reasonable inferences, the resolution of the factual determination would be left to the sound discretion of the trial court. The trial court acting as the fact-finder, resolved the factual dispute against Freeman.

■ Conscious indifference can be defined as "the failure to take some action which would seem indicated to a person of reasonable sensibilities under the same or

similar circumstances." *Young v. Kirsch,* 814 S.W.2d 77, 81 (Tex.App.-San Antonio 1991, pet. rehear'g denied); *Sunrizon Homes, Inc. v. Fuller,* 747 S.W.2d 530, 532 (Tex.App.-San Antonio 1988, writ denied). In view of the phone calls made to Medellin, the letter written to Medellin which included copies of the citation and petition, Medellin's familiarity of and experience with the legal system as a Senior Claims Service Adjuster for an insurance company, and the length of time which lapsed before the default judgment was finally entered, the trial court would not have abused its discretion by denying a motion for new trial.

Therefore, in the alternative, the trial court did not abuse its discretion by denying Freeman's motion because it could have concluded, based on the evidence before it, that Allstate's failure to answer was due to conscious indifference.

#### CONCLUSION

Because Freeman did not satisfy the first element of the *Craddock* test, the trial court did not err by denying the motion for new trial. Freeman's point of error is overruled and the judgment of the trial court is affirmed.

Chief Justice REX D. DAVIS concurring.

Justice BILL VANCE dissenting.

REX D. DAVIS, Chief Justice, concurring.

I concur only in the "alternative holding" set out in the lead opinion. *See Freeman v. Pevehouse,* 79 S.W.3d 637, 646–648 (Tex.App.-Waco 2002, no pet. h.) (Gray, J., lead opinion). I agree that the trial court did not abuse its discretion in denying Freeman's motion for new trial because it

could have concluded that Allstate's failure to answer was due to conscious indifference. *See Baker v. Kunzman,* 873 S.W.2d 753, 755 (Tex.App.-Tyler 1994, writ denied). On this basis, I would affirm the judgment.

BILL VANCE, Justice, dissenting.

I agree with the Corpus Christi Court of Appeals: "The historical trend in default judgment cases is toward the liberal granting of new trials." *Norton v. Martinez,* 935 S.W.2d 898, 901 (Tex.App.-San Antonio 1996, no pet.) (citing *Miller v. Miller,* 903 S.W.2d 45, 47 (Tex.App.-Tyler 1995, no writ)). When the elements of the *Craddock* test are satisfied, it is an abuse of discretion for the trial court to deny the defendant a new trial. *Director, State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 268 (Tex.1994).

Based on *Strackbein v. Prewitt,* my view is that no reasonable interpretation of the evidence supports a finding that Allstate's failure to answer the citation was the result of an intentional act or conscious indifference. *Strackbein v. Prewitt,* 671 S.W.2d 37, 39 (Tex.1984). Citing *Strackbein,* the Supreme Court has consistently reversed denials of new trials under similar circumstances. *See Evans,* 889 S.W.2d at 271; *Old Republic Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994); *Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 85 (Tex.1992).

I would reverse the decision to deny the motion for a new trial and remand the cause with instructions that a new trial be granted.