

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00369-CV

**ROSE RODRIGUEZ AND CARLOS RODRIGUEZ**
**D/B/A THE ROSE HOME,**

        **Appellants**

 **v.**

**CARL DAVID MEDDERS, EXECUTOR OF THE**
**ESTATE OF DANESE MEDDERS MAXWELL,**
**DECEASED; JOHN KENNETH MEDDERS, JR.**
**AND DEBORAH MEDDERS, INDIVIDUALLY,**

        **Appellees**

From the 361st District Court
Brazos County, Texas
Trial Court No. 11-000843-CV-361

## MEMORANDUM OPINION

Rose Rodriguez and Carlos Rodriguez d/b/a the Rose Home appeal from a no-answer default judgment entered against them for negligence and gross negligence in providing care for Danese Medders Maxwell, the mother of the appellees, which resulted in her death. The Rodriguezes complain that the evidence was legally insufficient to establish a causal nexus between Maxwell's injuries and her death, that

the cause should be classified as a Texas Medical Liability Act cause of action and dismissed because an expert report was not timely filed, and that the trial court abused its discretion by denying their motion for new trial pursuant to the factors set forth in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Because we find that the evidence was legally insufficient to support the damages award but was otherwise proper, we reverse the judgment of the trial court as to the damages award and remand to that court for a new trial on unliquidated damages. The judgment is otherwise affirmed.

### The Facts and Procedural History

The Rodriguezes operated a facility called The Rose Home, an unlicensed residence which provided shelter and residential care to invalids. Maxwell was living there prior to her death, which the Medderses allege was caused by the failure of the Rodriguezes to provide proper care resulting in serious decubitus ulcers that ultimately caused her death.

Carl David Medders, Executor of Maxwell's estate, John Kenneth Medders, Jr., and Deborah Medders initially filed a suit requesting a pre-trial deposition of Rose Rodriguez pursuant to rule 202 of the rules of civil procedure because the Rodriguezes had not responded to a written request for records relating to Maxwell. *See* TEX. R. CIV. P. 202. Rose Rodriguez was served by alternative means in that suit because the Medderses' process server was unable to serve her personally. Rose Rodriguez did not

appear or answer that petition and the Medderses took a default judgment against her granting the request for a deposition. Shortly before the deposition was scheduled, Rose Rodriguez delivered what was represented to be the records from The Rose Home to the attorney for the Medderses. Rose Rodriguez appeared for the deposition and testified that the records provided were true and correct copies. Upon learning that the records extended six days beyond Maxwell's death, Rodriguez's attorney stopped the deposition and Rodriguez invoked her Fifth Amendment right against self-incrimination. The deposition was rescheduled for April 1, 2011 but was canceled by Rodriguez's attorney on March 31, 2011.

The parties and their attorneys attended a pre-suit mediation which was unsuccessful on March 17, 2011. This suit was filed on April 1, 2011, asserting causes of action for negligence and gross negligence. Carlos Rodriguez was personally served on April 4, 2011; however, the process server was unable to serve Rose Rodriguez with the petition. The attorney that had previously represented the Rodriguezes did not represent the Rodriguezes in this suit. Carlos Rodriguez did not file an answer or otherwise appear and an interlocutory default judgment was taken against him on May 24, 2011 in the amount of $250,000 in actual damages and $500,000 in punitive damages. The Brazos County District Clerk sent a notice of default to Carlos Rodriguez on May 25, 2011.

On May 23, 2011 the trial court entered an order for alternative service on Rose Rodriguez by posting the citation on the front door of her last known residence, which was the same residence as Carlos Rodriguez's, and service was completed on May 26, 2011. Rose Rodriguez did not file an answer and a default judgment was taken against her also in the amount of $250,000 in actual damages and $500,000 in punitive damages. The trial court entered a final judgment on June 21, 2011. The Rodriguezes filed a motion for new trial on July 21, 2011 seeking to set aside the default judgment.

*Default Judgment*

The Rodriguezes complain in their third issue that the trial court abused its discretion by denying their motion for new trial because they met their burden of proof pursuant to *Craddock v. Sunshine Bus Lines*. *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). In *Craddock v. Sunshine Bus Lines*, the Texas Supreme Court explained that

> [a] default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939). "When all three elements of the *Craddock* test are met, the trial court abuses its discretion by not granting a new trial." *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992). The defaulting defendant has the burden of proving all three of those elements before a trial

court can be found to have abused its discretion. *Freeman v. Pevehouse*, 79 S.W.3d 637, 641 (Tex. App.—Waco 2002, no pet.).

The first prong of the *Craddock* test is one of intentional or conscious indifference: that the defendants knew they were sued but did not care. *Fid. & Guar. Ins. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575-76 (Tex. 2006). The excuse provided need not be a good one to suffice. *Id.* at 576.

The Rodriguezes attached substantially similar affidavits to their motion for new trial which alleged that Rose Rodriguez's mother was seriously injured in a traffic accident on March 24, 2011 and was in the hospital for approximately two weeks thereafter. Upon her mother's discharge from the hospital, she required 24-hour care and the Rodriguezes both spent large amounts of time taking care of Rose Rodriguez's mother. This continued until after the default judgments were taken. Each of the Rodriguezes stated that:

> As a result of the stress, anxiety, and pressure due to the accident, as well as the urgency of [Rose's mother's] care, I did not fully understand the importance of the deadlines applicable in this lawsuit, nor was I aware of its status. My failure to file an answer was not intentional or due to conscious indifference but an accident or mistake resulting from the stress, anxiety, and pressure surrounding my mother's medical condition.

The Medderses did not file a response to the motion for new trial but their attorney testified at the hearing on the motion for new trial and submitted an affidavit signed by him. The attorney testified to the procedural history of the case and the difficulties of securing service on Rose Rodriguez as well as her alleged forgery of some

of the records she had provided to the Medderses' attorney, which resulted in an indictment of her. Additionally, the attorney testified that he encountered Rose Rodriguez at a convenience store on May 25, 2011 and that she asked him if he handled injury cases. When the attorney replied that he did, Rose Rodriguez stated that she might call him as her mother had been in an accident. At the end of the conversation, the attorney testified that Rose Rodriguez stated "and don't worry, we are going to take care of that Medders case, too." No other evidence relating to the Rodriguezes' failure to answer was offered by either party.

In determining whether the failure to answer was due to intentional conduct or conscious indifference we must look to the knowledge and acts of the defendant as shown by all the evidence contained in the record before the court. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38-39 (Tex. 1984); *Freeman*, 79 S.W.3d at 641. If the factual assertions in the defendant's affidavits are not controverted by the plaintiff, the defendant satisfies his or her burden if their affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant. *Strackbein*, 671 S.W.2d at 38-39. However, conclusory allegations are insufficient. *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992); *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, writ ref'd).

However, when other controverting evidence is presented, in order to determine if the defendant's factual assertions are in fact controverted, the court also looks to all

the evidence in the record. *Director, State Emp. Wrks.' Comp. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994). When the non-movant presents evidence at the hearing for new trial tending to show intentional or consciously indifferent conduct, it becomes a question for the trial court to determine. *Freeman*, 79 S.W.3d at 641 (*citing Young v. Kirsch*, 814 S.W.2d 77, 80-81 (Tex. App.—San Antonio 1991, pet. reh'g denied*); *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied). In acting as factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Martinez v. Martinez*, 157 S.W.3d 467, 470 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (*citing Olin Corp. v. Smith*, 990 S.W.2d 789, 797-98 (Tex. App.—Austin 1999, pet. denied).

A trial court can reasonably believe, based on contradictory evidence, that there was intentional or consciously indifferent conduct on the part of a defendant. *Freeman*, 79 S.W.3d at 647 (*citing K-Mart Corp. v. Armstrong*, 944 S.W.2d 59, 62 (Tex. App.—Amarillo 1997, writ denied), and *Baker v. Kunzman*, 873 S.W.2d 753 (Tex. App.—Tyler 1994, writ denied)). At the hearing on the Motion for New Trial, the court was presented with conflicting evidence by the parties: the Rodriguezes, whose evidence presented a mistake or accident due to stress; and the Medderses, whose evidence portrayed the Rodriguezes as having been intentionally or consciously indifferent to the proceedings before as well as after Rose Rodriguez's mother's accident.

Based on the record in this appeal, we find that the trial court could have reasonably found that the Rodriguezes did not meet the first element of the *Craddock* test. Therefore, we do not need to determine if the Rodriguezes met the other two prongs of the *Craddock* test. We overrule the Rodriguezes' third issue.

*Texas Medical Liability Act Report*

The Rodriguezes complain in their second issue that the trial court erred by not granting the motion for new trial and dismissing the case because they were health care providers, which triggered the requirement for an expert report to be filed within 120 days of filing suit. However, when a default judgment is taken against the defendant, all allegations of material fact set forth in the petition are deemed admitted except the amount of unliquidated damages, and the default judgment conclusively establishes the defendant's liability. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). The expert report requirement serves a dual purpose; that is "to inform the served party of the conduct called into question and to provide a basis for the trial court to conclude that the plaintiff's claims have merit." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008). As the Texas Supreme Court stated in *Gardner*, "it makes little sense to require service of an expert report on a party who by default has admitted the plaintiff's allegations." *Gardner*, 274 S.W.3d 671.

The Medderses did not plead that the Rodriguezes were health care providers but made claims for ordinary negligence and gross negligence. However, even if the claims were health care claims, because the allegations were deemed admitted any error in the failure to file an expert report was waived by the Rodriguezes' failure to answer the lawsuit. We overrule issue two.

*Sufficiency of the Evidence*

In their first issue the Rodriguezes complain that the evidence was legally insufficient to establish a causal nexus between the injury to Maxwell and her death, which the Rodriguezes argue required expert testimony to establish. Maxwell developed stage IV decubitus ulcers, commonly known as bedsores, on her heel and coccyx while residing at The Rose Home. The only evidence presented at both default judgment hearings was the testimony of Kenneth Medders, Jr., Maxwell's son. The Rodriguezes contend that the lay testimony presented by Medders was legally insufficient to establish the causal nexus between the Rodriguezes' negligence and Maxwell's injuries. The Medderses respond that lay testimony is sufficient to establish the causal nexus because the nature of decubitus ulcers, their cause, and potential effects are within the realm of general knowledge, experience and common sense of laypersons. The Medderses further argue that the testimony established a sequence of events which provided a strong, logically traceable connection between the

development of the decubitus ulcers and Maxwell's death, and therefore, no expert testimony was required. We agree with the Rodriguezes.

"Lay testimony may be used as evidence of causation in certain circumstances, but when expert testimony is required, lay evidence supporting liability is legally insufficient." *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) (internal quotations omitted). "When lay testimony is credited as evidence of causation, it usually highlights a connection between two events that is apparent to a casual observer." *Id.* "Non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Id.* at 534. Expert testimony is necessary when there are multiple potential medical causes of an injury. *Id.* (finding that expert testimony is required to determine whether an infection was caused by omitted antibiotics or other infections (*citing Kaster v. Woodson*, 123 S.W.2d 981, 983 (Tex. Civ. App.—Austin 1938, writ ref'd) ("What is an infection and from whence did it come are matters determinable only by medical experts.")); *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1966) ("In determining negligence in a case such as this, which concerns the highly specialized art of treating disease, the court and jury must be dependent on expert testimony. There can be no other guide, and where want of skill

and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury.").

The evidence established that Maxwell was placed at The Rose Home because she was unable to care for herself and was totally incapacitated. Maxwell was 91 years old at the time of her death. She had been prescribed pain medication by her physicians prior to the development of the decubitus ulcers. Medders stated that shortly after the discovery of the decubitus ulcers his mother passed away and that he believed that the decubitus ulcer hastened her death, but there was no testimony regarding how the ulcers resulted in Maxwell's death or what was established as her actual cause of death. We do not find that, on the record before us, the causal nexus required to establish that the decubitus ulcers caused Maxwell's death is within the general experience and common sense of laypersons. As such, expert testimony was necessary. *See generally*, *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010); *Guevara v. Ferrer*, 247 S.W.3d 662, 668-69 (Tex. 2007). We sustain issue one.

Generally, if an appellate court holds there is legally insufficient evidence to support a judgment after a trial on the merits, the proper disposition is to reverse and render judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992); *see* Tex. R. App. P. 43.3, 60.2. However, when a plaintiff fails to present legally sufficient evidence at an uncontested hearing on unliquidated damages following a no-answer default judgment, the proper disposition is to remand for a new trial on the issue of

damages. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) (per curiam) (*citing Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992)). This is because "the plaintiff should be afforded a second opportunity to present evidence in support of its claims because as a practical matter, in an uncontested hearing, evidence of unliquidated damages is often not fully developed." *Id.*

*Conclusion*

Because there was legally insufficient evidence regarding the award of damages, we reverse that portion of the judgment awarding the Medderses $250,000 in actual damages and $500,000 in punitive damages. In all other respects, we affirm the trial court's judgment. We remand the cause to the trial court for further proceedings consistent with this opinion.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed in part, Reversed and remanded in part
Opinion delivered and filed October 4, 2012
[CV06]