**AFFIRM; and Opinion Filed August 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-14-00338-CV
_____

### IN THE INTEREST OF J.R. III, A CHILD

_____

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-12-03557-T**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellant Myrna Padilla (Mother) appeals from (1) a default final order rendered in favor of appellee John Ramirez Jr. (Father) in this suit affecting the parent-child relationship (SAPCR), and (2) the trial court's order denying her motion for new trial. For the reasons that follow, we affirm.

### BACKGROUND

Mother and Father were not married, but lived together in Father's home and had a child, J, in 2005. In February 2012, Mother filed a petition for divorce. She contended that she and Father were informally married in 2005. In an amended petition filed two days later, Mother asked to be appointed J's sole managing conservator and that Father be denied access to J because of "a history or pattern of child neglect[.]" Alternatively, Mother asked the court to order Father's periods of visitation to be supervised.

Father answered, generally denied Mother's allegations, and specifically denied that he and Mother were ever married formally or informally. He also filed a counter-petition SAPCR in which he sought to be appointed sole managing conservator of J. Alternatively, he sought a joint managing conservatorship and to be appointed as the parent with the exclusive right to designate J's primary residence. Father asked the court to restrict J's residence and to take measures to protect against the "risk of international abduction of the child" by Mother.

Mother and Father agreed that while the case was pending trial, Mother and J would live in Father's home and Father would live elsewhere, Father would have standard visitation rights, Mother would pay certain expenses of the home, and Father would pay the mortgage in lieu of child support.

About a year later, Mother nonsuited her petition for divorce and the associate judge vacated "all orders regarding the property of the parties[.]" Father subsequently evicted Mother. He watched as Mother moved out of his home and saw her removing items of his personal property without his permission. He called the police, but they did not help him. When Father went inside his home, he discovered there was no telephone or utility service because Mother had not paid the bills. Father amended his counter-petition to allege a claim against Mother for theft and conversion. Meanwhile, Mother's counsel withdrew from representing Mother.[1]

The trial court held a pretrial/status hearing at which Mother appeared pro se and Father appeared in person and with an attorney. The court set a date certain for a bench trial and deadlines for the completion of discovery and the exchange of witness lists and exhibits. The court also ordered the parties to attend mediation, and, although they did, they did not resolve their differences.

---

[1] This was the second attorney to withdraw from representing Mother.

On the date set for trial, Father appeared with his attorney, but Mother did not appear. Father testified about J and also offered documentary evidence to support his claim for conversion. The trial court orally made a ruling and, about a week later, signed a final order appointing Mother and Father joint managing conservators of J with Father having certain exclusive rights, including the right to designate J's primary residence. The court also awarded Father a judgment for $24,428.82 on his claim for conversion, $779.64 for utilities that Mother did not pay while she resided in Father's home, and $5,000 in attorney's fees.

Two days after the final order was signed, Mother, through new counsel, filed a motion for new trial. She contended that she did not appear for trial because Father told her the trial date was going to be changed. Father responded to the motion and denied Mother's allegation. The trial court held a hearing on Mother's motion and denied it.

Mother appeals the denial of her motion for new trial and the final order in the SAPCR.

### ISSUE ONE:  MOTION FOR NEW TRIAL

Issue one states:

> The trial court erred in denying [Mother]'s Motion for New Trial for two reasons. First, the trial court applied the wrong standard in evaluating [Mother]'s Motion for New Trial. Instead of evaluating the motion under the familiar *Craddock* standard, the trial court denied the motion simply because [Mother] did not appear for trial. Second, the trial court erred because [Mother] satisfied the *Craddock* standard.

### Applicable Law & Standard of Review

A party moving for new trial following a default judgment must satisfy the three elements of the *Craddock* test:

> (1) the failure to answer or appear was not intentional or the result of conscious indifference but was due to a mistake or accident; (2) the defendant sets up a meritorious defense; and (3) the motion is filed at such time that granting a new trial would not result in delay or otherwise injure the plaintiff.

*Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

–3–

The movant satisfies its burden under the first element "when the factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam). But when the factual assertions are controverted, the determination becomes a question of fact for the trial court to decide. *Litman v. Litman*, 402 S.W.3d 280, 286 (Tex. App.—Dallas 2013, pet. denied); *Utz v. McKenzie*, 397 S.W.3d 273, 278 (Tex. App.—Dallas 2013, no pet.).

In determining whether the movant acted intentionally or consciously indifferent, the trial court looks to the knowledge and acts of the defaulting party. *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994); *see also In re P.J. Jr.*, No. 02-13-00052-CV, 2013 WL 6727879, at *2 (Tex. App.—Fort Worth Dec. 9, 2013, no pet.) (mem. op.). The failure to appear must be more than just "deliberate; it must also be without adequate justification." *Litman*, 402 S.W.3d at 285 (quoting *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam)). "Proof of such justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied. Also, conscious indifference means more than mere negligence." *Id.* (quoting *Smith*, 913 S.W.2d at 468). When faced with conflicting evidence on the issue of intent or conscious indifference, it is within the discretion of the court to resolve those conflicts and determine whether the failure to appear was the result of intentional conduct or conscious indifference. *Id.*; *see also Utz*, 397 S.W.3d at 278 (judge as factfinder determines credibility of witnesses and weight to be given to their testimony and has authority to choose to believe all, none, or part of testimony given).

We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d at 114. A trial court abuses its discretion by denying a motion for new trial if the defaulting party satisfied all three elements of the *Craddock* test. *Id*. at 114–15.

## Discussion

As it relates to the first *Craddock* element, Mother contended in her motion for new trial that Father "purposefully misinformed" her about the court date and told her "that no hearing had been held." Mother's affidavit attached to the motion stated in its entirety:

> My name is Myrna Cecilia Padilla. I am above the age of eighteen years, and I am fully competent to make this affidavit. I am the movant in this Motion for New Trial. The facts stated in this affidavit are within my personal knowledge and are true and correct.
>
> John never told me that he wanted our child to live with him and that he wanted to have our child live in counties contiguous to Kaufman County. John never had a reason to believe that I would take our son to live outside the United States and now if I can't get the Mexican Consulate·to accept the order I can't·see our son. He never told me he was trying to keep me from our child. He was in court and said that he was fine with the visitation when he had standard and that our son would continue to live with me. The order is the first I hear about visitations on Halloween, Memorial Day, Labor Day and Easter Sunday. All these things are a surprise to me.
>
> Additionally, I understand that he [sic] order gives us certain rights and duties but I do not know why he gets exclusive rights. He knows I bought the furniture he says belongs to our child.
>
> I understand that if there was no marriage there was no divorce and that property could not be divided. I did not steal anything and believe the judgments are unfair and over the top.
>
> The biggest issue is that I believed what John told me when he said the court was cancelled and even after the court I still believed him when he said there was no court.
>
> Our child does not have a valid passport.
>
> I cannot comply with the order because it is not clear in some parts and the Consulate General of Mexico cannot take my order until it is reviewed which essentially cancels any visitation I could have with our child.
>
> I am asking the Court to allow a new trial so the Judge can hear both sides of the story that are in our child's best interest.

At the hearing on the motion for new trial, Mother testified and agreed that she was present at the pretrial hearing when the court set the trial date. But she testified that she did not appear for trial because Father told her "his lawyer will set the court date . . . because it changed because of the mediation that we did not get into an agreement." The court asked Mother:

THE COURT: So he informed you that this date was going be [sic] changed?

[MOTHER]: Yes.

THE COURT: Did you ever get anything from the court where this date was changed?

[MOTHER]: No.

The court asked Mother whether she had a text from Father to support her contention, and Mother said no because Father told her this in a phone conversation. Mother also testified that she spoke with Father on the date of the trial: "I asked him was the court for that day; and he said which court? No, we don't have any court." Mother testified that she believed Father. Then Mother testified that she spoke with Father after the trial:

Yes, one day after I'm asking if – because I talk to him and I got the papers from the court where the two police officers got the order to appear in court. . . . So I ask him what happened, what you talk about? I don't know. I don't know what you're talking about. We don't have no court. And I tell him okay. That day he got my son and took him.

She said she "truly believed that date was going to be changed by his attorney . . . and [she] would be notified at some point" of the new trial date.

Father also testified at the hearing and denied that he "ever had a conversation on the phone with [Mother] about this trial[.]" He said he did not talk to Mother on the day of trial, or any time, and tell her the case was not going to trial. And he said when he got J from Mother after the trial, she did not ask him anything about the case.

At the conclusion of the hearing, the court denied Mother's motion for new trial, stating:

I think the issue is the Court issued an order . . . . Dad and his attorney were here. Ma'am you were here. I don't care what he said. You have the choice to get another attorney. You did not. There was a court order. We all came down here for the trial. So I am going to deny your motion for new trial.

On appeal, Mother contends that the "trial court ignored the first prong of *Craddock* and instead relied on circular reasoning." She contends that "[i]nstead of evaluating the evidence and assessing the credibility of the witnesses, the trial court denied the Motion on the basis that [she] did not appear at trial." She also contends that she satisfied the three elements of *Craddock*. We disagree.

The evidence concerning why Mother did not appear for trial was conflicting. The trial court as factfinder had to resolve the conflict and did so in Father's favor. Regardless of the statement the trial court made in orally denying Mother's motion, the record supports a reasonable inference that the trial court evaluated Mother's and Father's testimony and found Father's testimony more credible. "We will not second guess the trial court's discretion to determine" the credibility of a witness or resolve questions of fact. *See Allen v. Allen*, No. 13-09-704-CV, 2011 WL 861582, at *3 (Tex. App.—Corpus Christi Mar. 10, 2011, no pet.) (mem. op.); *see also Utz*, 397 S.W.3d at 278.

Additionally, based on this record the court could have reasonably concluded that Mother was consciously indifferent to the trial date when she chose to rely on the representation of Father, her adversary and the person seeking sole custody of her child, instead of the official notice from the court about the trial date. Consequently, we cannot conclude that the trial court abused its discretion by denying Mother's motion for new trial because Mother did not satisfy the first element of *Craddock*. We resolve issue one against Mother.

### ISSUE TWO: CONSERVATORSHIP OF J

Issue two states:

The trial court abused its discretion in amending the existing child custody arrangements because the trial court did not have enough evidence to determine whether such a modification was in the best interest of the child. In contrast to the paucity of information on the best interest of the child, Appellee provided extensive, but conflicting, evidence on his claims for conversion.

## Applicable Law & Standard of Review

Mother frames her issue as one of modification of a conservatorship order, but this conservatorship order was the first order affecting this parent-child relationship. The parties' previous custody arrangement was made by their agreement. We will review issue two under the standard for an initial conservatorship order, not a modification of an existing conservatorship order. *See In re M.P.B.*, 257 S.W.3d 804, 812 (Tex. App.—Dallas 2008, no pet.) (explaining differences between original conservatorship order and modification of order) (citing *In re C.A.M.M.*, 243 S.W.3d 211, 214–15 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (same)).

A trial court's "primary consideration" when determining conservatorship of a child is the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014).

> It is well settled that a trial court is given wide latitude in determining the best interests of the child, and its judgment will be reversed only when it appears from the record as a whole that the court has abused its discretion. . . . This rule is "based on the fact that the trial court is in the best situation to observe the demeanor and personalities of the witnesses and can 'feel the forces, powers, and influences that cannot be discerned by merely reading the record.'"

*In re T__*, 715 S.W.2d 416, 418 (Tex. Civ. App.—Dallas 1986, no writ) (quoting *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. Civ. App.—Dallas 1981, no writ) (internal citation omitted)); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A court considers many factors in determining whether joint conservatorship is in the best interest of the child.[2]

---

[2] Among those factors are:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

And we will not reverse a trial court's determination of conservatorship absent an abuse of discretion. *In re T__*, 715 S.W.2d at 418. Under the abuse of discretion standard of review, a challenge to the legal sufficiency of the evidence is not an independent ground of error, but is a factor in assessing whether the trial court abused its discretion. *Harris v. Vanegas*, No. 05-13-01059-CV, 2014 WL 4298098, at *2 (Tex. App.—Dallas Aug. 21, 2014, no pet.) (mem. op.). Evidence that is more than a scintilla is legally sufficient to support the finding under review. *Id.*

## Discussion

Mother argues that the trial court abused its discretion "in altering the terms of [J]'s custody because the trial court did not ground its decision in [J]'s best interests, as required by the Family Code." She also contends that there was no evidence concerning J's best interest. We disagree.

The court heard testimony from Father that J enjoyed his visits with Father while the case was pending, that Father planned to live with J in the home where J was raised, and that J would have his own room. The court also heard Father testify that he would keep J at his current school because the elementary school J attended before "passed him on when he shouldn't have been." Father said J had been performing at low levels in school and that although Father talked to Mother about "some tutoring or some private help" and spending more time with J to help him, Mother was not receptive to those suggestions. Father also testified that he has offered to take J to counseling. Additionally, the court heard testimony that Mother said she might leave and take J to Mexico, where she has family ties. Father asked for restrictions on J's travel because of his

---

(2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
(3) whether each parent can encourage and accept a positive relationship between the child and the other parent;
(4) whether both parents participated in child rearing before the filing of the suit;
(5) the geographical proximity of the parents' residences;
(6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and
(7) any other relevant factor.

TEX. FAM. CODE ANN. § 153.143. *See also Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

fear Mother would leave the country with J. And the record showed that Mother had not paid the utility bills for several months while she lived with J in Father's home and as a consequence the services had been turned off. For all these reasons, Father testified that it was in J's best interest to live with Father. There was no controverting evidence.

We conclude that this was some evidence of a substantive and probative character to support the trial court's decision that it was in J's best interest to appoint Father and Mother as joint managing conservators with Father having the exclusive right to determine J's primary residence. As a result, the trial court did not abuse its discretion in determining the conservatorship issue. We resolve issue two against Mother.

**ISSUE THREE: DAMAGES AND ATTORNEY'S FEES AWARDS**

In issue three, Mother complains about the award of damages on Father's conversion claim and the award of Father's attorney's fees:

> The evidence was legally and factually insufficient to support the trial court's award in Appellee's claim for conversion and for attorney's fees. The trial court awarded Appellee all of the damages that he requested, but the evidence presented at trial established that an unknown amount of the damages that Appellee claimed were inflicted by an unidentified neighbor rather than by Padilla. Further, the evidence used to justify the award of attorney's fees was conclusory and so insignificant that the award is unsupported by the record.

**Damages for Conversion**

Mother cites Father's trial testimony that some of his personal property went to the neighbor's house and argues there was "no evidence to indicate whether [Mother] was responsible for the neighbor's taking the property . . . ." And she contends that "the evidence conclusively established the opposite of [Father]'s claim that [Mother] wrongly appropriated more than $24,000 of [Father]'s property." We disagree.

–10–

## Standard of Review

Mother recites the standard of review for both legal and factual insufficiency, but argues there is "no evidence" to support the damages for conversion. We construe her argument as a legal insufficiency challenge. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference in the verdict's favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The ultimate question is whether the evidence would allow reasonable people to reach the verdict under review. *Id*. at 827.

## Discussion

Father testified that when he evicted Mother she took numerous items of his personal property without his permission. He said "[m]ost of the stuff was gone. And a lot of it went to the neighbor's house." Father's attorney explained to the trial court that Father saw Mother removing these items of personal property and called the police. Father said he "explained to the officer, that's going to the neighbor's house." But Father did not testify that the neighbor was removing the property from Father's house; he testified that he saw Mother removing the property from his house and some of the property was "going to the neighbor's house." A reasonable inference from this testimony is that Mother took the property to the neighbor's house.

Father testified that the value of the property he claimed Mother converted was $24,482.82, and he introduced an exhibit listing each item of property and its value to support his testimony. We conclude that this evidence is legally sufficient to support the award of damages on Father's conversion claim. We resolve this part of issue three against Mother.

**Attorney's Fees Award**

Mother also contends that there is no evidence to support the award of $5,000 to Father for attorney's fees because Father's attorney did not testify about the number of hours he worked on this case or his hourly rate. Again, we disagree.

### Applicable Law & Standard of Review

Although the calculation of attorney's fees under the lodestar method requires testimony concerning the number of hours worked and the hourly rate, *see El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 759, 760 (Tex. 2012), there is no contention here that attorney's fees in a SAPCR must be calculated according to the lodestar method, *see In re Marriage of Pyrtle*, 433 S.W.3d 152, 167 (Tex. App.—Dallas 2014, pet. denied) (stating that courts considering sufficiency challenges to attorney's fees awards since *El Apple* have concluded *El Apple* "'has no bearing on non-lodestar awards of fees'") (quoting *Metroplex Mailing Servs., LLC v. RR Donnelly & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.)). In a non-lodestar case, "'an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award.'" *Classic Superoof LLC v. Bean*, No. 05-12-00941-CV, 2014 WL 5141660, at *9 (Tex. App.—Dallas Oct. 14, 2014, pet. denied) (mem. op.) (quoting *In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, pet. denied)); *see also Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010) (attorney's brief testimony about experience, total amount of fees, and that total amount of fees was reasonable and necessary is "some evidence" of reasonable attorney's fee).

A trial court has broad discretion to award reasonable attorney's fees in a SAPCR. TEX. FAM. CODE ANN. § 106.002 (West 2014); *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.). The reasonableness of attorney's fees is a question of fact that must be supported by evidence. *In re M.A.N.M.*, 231 S.W.3d at 567. A trial court does not abuse its

discretion when there is some evidence to support the award of attorney's fees. *Tull v. Tull*, 159 S.W.3d 758, 760 (Tex. App.—Dallas 2005, no pet.).

**Discussion**

Father's attorney testified that he has practiced law since October 1975. He said the case was "very difficult" because one person was claiming there was a marriage and the other was claiming there was no marriage. He said he had to prepare for trial and had "expended $7,500 in legal fees through this matter, from the beginning." He said this fee was justified "given the hours that it's taken—mediation that we went through, that was not effective—that's a fair and reasonable fee for the complexity of this case, and the number of hearings that we've had, that the record shows."

Although Father's attorney did not testify about the specific number of hours he worked on the case or his hourly rate, he testified about the total fees incurred and said the fees were "fair and reasonable for the complexity of this case . . . ." And this evidence was uncontroverted. Additionally, the court was authorized to "consider the entire record and the common knowledge of the lawyers and judges" in determining whether the fees to which Father's attorney testified were reasonable. *In re M.A.N.M.*, 231 S.W.3d at 567. A reasonable inference from the evidence is that the trial court was aware of the proceedings in the case and, as a family law court, was familiar with the rates and reasonableness of attorney's fees in a SAPCR. *See id.* We conclude that the evidence is legally sufficient to support the award of attorney's fees. *See Garcia*, 319 S.W.3d at 641; *Classic Superoof*, 2014 WL 5141660, at *9; *In re M.A.N.M.*, 231 S.W.3d at 567–68. Accordingly, we further conclude that the trial court did not abuse its discretion by awarding $5,000 in attorney's fees to Father. We resolve this part of issue three against Mother.

## CONCLUSION

We affirm the trial court's order.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

140338F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF: J.R. III, A CHILD,

No. 05-14-00338-CV

On Appeal from the 301st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF12-03557-T.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

In accordance with this Court's opinion of this date, the final order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee John Ramirez Jr. recover his costs of this appeal from appellant Myrna Padilla.

Judgment entered this 5th day of August, 2015.