**AFFIRM; and Opinion Filed May 15, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00903-CV**

**ANDRA S. LITMAN, Appellant**

**V.**

**CRAIG LITMAN, Appellee**

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF10-01069**

## OPINION

Before Justices O'Neill, Francis, and Murphy
Opinion by Justice Francis

Andra S. Litman (Wife) appeals a final decree of divorce rendered by the trial court. In five issues, Wife complains that the trial court erred by denying her motions for continuance, recusal, disqualification, and new trial. Because we conclude the trial court did not abuse its discretion in denying Wife's motions, we affirm the trial court's judgment.

Wife and appellee Craig Litman (Husband) were married on January 7, 1984. On January 21, 2010, Husband filed for divorce. After changing counsel twice, Wife sought and obtained a continuance of the October 27, 2010 trial setting. The trial was reset to December 15, 2010. On December 8, Wife filed a second motion for continuance of the trial date. After conducting an evidentiary hearing, the trial court denied this motion. In the hallway outside the

courtroom after the hearing, Wife's counsel told Husband's counsel, "Don't work all weekend because I am going to file a Motion to Recuse." On December 14, 2010, the day before trial, Wife filed a third motion for continuance, which the trial court also denied. At 9:08 a.m. the next day, as trial was commencing, Wife filed a motion to recuse the trial judge. Neither she nor her counsel appeared at trial. The trial judge referred the motion to the presiding judge of the administrative judicial district, but also struck the motion as untimely and proceeded to trial. After hearing Husband's evidence, the trial judge stated on the record that the divorce was granted and that Husband's proposed division of assets was adopted. The only written order signed by the trial judge on December 15, 2010, however, was the order referring Wife's motion to recuse to the Presiding Judge of the First Administrative Region.

Two days later, on December 17, 2010, the Regional Presiding Judge denied the motion to recuse by written order. The order stated the Regional Presiding Judge "determined . . . that the motion is based on legal rulings, and is untimely filed," and was therefore "facially insufficient to merit a hearing." Following this ruling, on December 21, 2010, the trial court signed a final decree of divorce.

Wife filed a timely motion for new trial. The trial judge's term of office ended. The successor judge heard the motion for new trial and denied it, but signed an order vacating the December 21, 2010, decree and entering a modified decree on April 5, 2011. Wife filed a motion for new trial objecting to the modified decree. The trial court signed amended findings of fact and conclusions of law on May 18, 2011. On June 23, 2011, Wife filed a motion to disqualify the law firm of Goranson Bain, Husband's counsel. The trial court heard the motion and denied it. This appeal followed.

In her first issue, Wife complains that the December 15, 2010 proceedings were a nullity because they occurred while her recusal motion was pending. Therefore, Wife argues, no

–2–

evidence supports the marital property division in the trial court's modified decree. We review the denial of a motion to recuse for an abuse of discretion. TEX. R. CIV. P. 18a(j)[1]; *Carmody v. State Farm Lloyds*, 184 S.W.3d 419, 420 (Tex. App.—Dallas 2006, no pet.). Wife contends any action taken by the trial court after her recusal motion was filed was void, thus the evidence offered by Husband at the December 15, 2010 hearing was no evidence as a matter of law and any subsequent order was not supported by any evidence. She does not contend the Regional Presiding Judge abused his discretion by denying the motion to recuse, however.

Wife's counsel filed the motion to recuse on the morning set for trial, and left the courthouse without presenting the motion to the trial court. The trial court called the case and Husband's attorney announced ready. No one appeared on Wife's behalf. The trial court declined to recuse himself, stating on the record the motion was "not timely filed" and the filing of the motion for continuance as well as the motion to recuse was "dilatory in the extrem[e]." In the written order referring the motion to recuse to the Regional Presiding Judge, the trial judge wrote that the motion was "not timely filed and therefore struck." The trial court called Wife's counsel and left messages for him to return to the courtroom. When no one appeared on behalf of Wife, the trial court proceeded to hear evidence. Just after the proceedings concluded, Wife's attorney appeared in the courtroom and was informed that the hearing had taken place and the divorce granted. Further, the trial judge told him he had determined the recusal motion was not timely filed and had struck it, called for him twice in the hall, and the attorney's "showing up to file a Motion to Recuse and then scurrying out is disingenuous at best." Wife's attorney responded, "You certainly have the all right [sic] to believe that, Your Honor." Finally, the trial judge said he had adopted Husband's "generous proposed division of assets," to which the

---

[1] Rules 18a and 18b, Texas Rules of Civil Procedure, regarding recusal and disqualification of judges, were amended effective August 1, 2011. *See* Tex. Sup. Ct. Orders of July 5, 2011, and July 22, 2011, Misc. Docket Nos. 11-9126 and 11-9141. Because Wife's motion to recuse was filed and ruled upon in December 2010, we consider and apply the rules applicable prior to the 2011 amendments, and all references to Rules 18a and 18b are to the prior rules.

–3–

attorney replied, "Not a problem, Your Honor." Wife's attorney did not request that the trial court reopen the evidence or allow him to make an offer of proof.

Wife contends that once she filed the motion to recuse, the trial judge could take no action other than to forward the motion to the presiding judge of the administrative region, and await the presiding judge's ruling on the motion. *See* TEX. R. CIV. P. 18a(d) ("Except for good cause stated in the order in which further action is taken, the judge shall make no further orders and shall take no further action in the case after filing of the motion and prior to a hearing on the motion.").

Wife relies on *Hudson v. Texas Children's Hosp.*, 177 S.W.3d 232 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In *Hudson,* as here, the motion to recuse the trial judge was filed the morning of the scheduled hearing. *Id.* at 234. The trial judge orally denied the motion, stating that it was untimely, and proceeded with the hearing. The First Court of Appeals acknowledged it had previously implied that a trial judge may determine whether the ten-day requirement of Rule 18a has been met before deciding whether to recuse or refer. *Id.* at 235. In *Hudson*, however, the claimed event triggering the motion to recuse occurred less than ten days before the next scheduled hearing. Consequently, the court reversed the trial court's judgment, concluding the trial judge was required to either recuse himself or refer the motion to the presiding judge for determination. *Id.* at 236. The court stated that under Rule 18a, the trial judge did not have the option of determining the motion was untimely. *Id.*

Wife makes the same argument here. She contends the reason for her motion to recuse was not known within ten days before the hearing, that is, that the trial judge was "dismissive" when denying her motion for continuance on the day before trial. What Wife fails to acknowledge, however, is that her counsel told Husband's counsel the week before that he

–4–

planned to file a motion to recuse. Regardless, Husband relies on our opinion in *Carmody* to support the trial judge's actions here.

In *Carmody*, we concluded a trial judge did not abuse his discretion in ruling that appellants' motion for recusal was untimely with respect to a summary judgment hearing that had already commenced at the time the motion was filed. *Carmody*, 184 S.W.3d at 422. We noted that although courts of appeal diverged on "whether a judge may deny a recusal motion based on procedural deficiencies," this Court "has generally held that the trial judge is limited to the decision to recuse or refer." *Id.* at 421. But we concluded the rationale of the "recuse or refer" rule, to preserve confidence in the impartiality of the judiciary by minimizing a judge's involvement in recusal proceedings, was "not offended when a trial judge concludes a motion for recusal brought after the commencement of a hearing is not filed at the earliest practicable time where the alleged grounds for recusal were known to the parties prior to the commencement of the hearing." *Id*. at 422.

In *Carmody*, we cited several cases as the source for the "recuse or refer" rule, including *Bourgeois v. Collier*, 959 S.W.2d 241, 246 (Tex. App.—Dallas 1997, no writ), *Lamberti v. Tschoepe*, 776 S.W.2d 651, 652 (Tex. App.—Dallas 1989, writ denied), *Greenberg, Benson, Fisk & Fielder, P.C. v. Howell*, 685 S.W.2d 694, 694 (Tex. App.—Dallas 1984)(orig. proceeding), and *Greenberg, Fisk & Fielder v. Howell*, 676 S.W.2d 431, 432–33 (Tex. App.— Dallas 1984)(orig. proceeding). In each of these cases, as well as in *Carmody* and in *Hudson*, the trial judge ruled on the procedural sufficiency of the motion to recuse without making any referral of the motion to the presiding judge. Here, in contrast to all of these cases, the motion to recuse was referred to the presiding judge; the presiding judge considered and ruled on the motion; and Wife makes no complaint about the presiding judge's ruling. *Cf. In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (motion to recuse referred to presiding judge;

complaint about presiding judge's actions may be made on appeal); *see also Hudson*, 177 S.W.3d at 237 (distinguishing two cases in which trial judge had "followed the recuse or refer mandate of Rule 18a" by referring to administrative judge). In addition, the trial judge refrained from signing any order other than the referral order until after the presiding judge had ruled on the motion to recuse.

Under these circumstances, we reach a conclusion similar to our decision in *Carmody*. Wife's counsel filed the motion to recuse on the morning of trial, citing grounds that were known to her at the time her motion for continuance was denied on December 8.[2] As required by Rule 18a, the trial judge did in fact refer the motion to the presiding judge of the administrative judicial district. In his order of referral, he wrote that the motion to recuse was untimely and "therefore struck." The presiding judge denied the motion two days later, concluding that no hearing was required because the motion was "facially insufficient." The trial judge did not sign the divorce decree until after the presiding judge had denied the motion to recuse. And shortly thereafter, the trial judge's term of office ended. The successor judge considered Wife's complaints and signed a modified decree. Under these circumstances, we conclude as we did in *Carmody*, that the rationale of the "recuse or refer" rule was not offended by the trial judge's actions. Although the trial judge concluded the motion was untimely, he also referred the motion for determination by the presiding judge, noting his reason for proceeding with hearing evidence, and waited for a ruling on the motion before signing any other orders. *See* TEX. R. CIV. P. 18a(d) (trial judge shall make no further orders "[e]xcept for good cause stated in the order in which further action is taken"). We conclude the trial court did not abuse its discretion. We

---

[2] As the trial court noted in its written Opinion and Ruling of April 5, 2011, the affidavits proffered on December 14 were "largely the same as those in support of the December 8 proceeding."

overrule Wife's first issue complaining the proceeding was a nullity and no evidence supports the property division.

In her second issue, Wife argues the trial court erred by denying her motions for new trial. We review a trial court's ruling on a motion for new trial for abuse of discretion. *In re J.P.*, 365 S.W.3d 833, 836 (Tex. App.—Dallas 2012, no pet.). The trial court has broad discretion to grant or deny a new trial, and the trial court's action will not be disturbed on appeal unless the trial court acted in an arbitrary or unreasonable manner, without reference to guiding rules and principles. *Id.* The requirements for setting aside a default judgment by motion for new trial are set out in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939). The movant must (1) establish that the failure to appear was not intentional or the result of conscious indifference, (2) set up a meritorious defense, and (3) demonstrate that setting aside the default will not cause a delay or otherwise injure plaintiff. *See Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 390 (Tex. 1993) (citing *Craddock*, 134 Tex. at 393, 133 S.W.2d at 126).

The movant has the burden to negate the existence of conscious indifference. *See Johnson v. Edmonds*, 712 S.W.2d 651, 652 (Tex. App.—Fort Worth 1986, no writ). In contravention to the movant's case, the nonmovant may present evidence tending to show intentional or consciously indifferent conduct creating a question for the trial court to determine. *Scenic Mountain Med. Ctr. v. Castillo*, 162 S.W.3d 587, 590 (Tex. App.—El Paso 2005, no pet.).

Wife argues that neither her nor her counsel's failure to appear was intentional or the result of conscious indifference. She contends that the failure to appear was the result of a mistake of law. She relies on *Smith v. Babcock & Wilcox Construction Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam). In *Smith*, the court described the applicable standard:

> A failure to appear is not intentional or due to
> conscious indifference within the meaning of the

rule merely because it is deliberate; it must also be without adequate justification. Proof of such justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied. Also, conscious indifference means more than mere negligence.

*Id.* at 468 (citations omitted). The supreme court described the actions of the attorney: "He was actually in trial in another county and believed, based upon his credible explanation, the court would grant a continuance for that reason." *Id.* The attorney had attempted to resolve the conflict by moving for a continuance, and mistakenly understood the continuance would be granted. *Id.* Wife explains that in circumstances similar to those in *Smith*, her attorney mistakenly believed that because a motion to recuse had been filed, the case would not be heard. She contends this is a reasonable explanation that negates conscious indifference. *See id.*

Citing *Bank One Texas, N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992), and *Walker v. Gutierrez*, 111 S.W.3d 56, 65 (Tex. 2003), Husband argues that even if Wife's attorney was mistaken about the effect of his filing a motion to recuse, not every mistake of law satisfies the first prong of *Craddock*. Husband argues that Wife's attorney ignored the plain language of Rule 18a allowing a trial court to proceed upon a finding of good cause. *See, e.g., Walker*, 111 S.W.3d at 63 (citing cases in which mistakes of law failed to meet the *Craddock* standard, and concluding that failure to comply with two of three statutory requirements for expert affidavits was not mistake of law negating conscious indifference).

Husband also submitted an affidavit in support of his response to Wife's motion for new trial. The affidavit contained evidence controverting Wife's explanation of her counsel's mistake of law. Husband testified to his belief that the motion to recuse was filed in an attempt to delay the proceedings further and obtain the continuance that the trial court had already denied. He explained that at the hearing on the December 8 motion for continuance, he offered

evidence of Wife's physical condition and ability to perform "normal everyday activities" to controvert Wife's contention that she was physically unable to assist her counsel in preparation for trial. Husband testified at length as to Wife's refusal to respond to discovery, previous attempts to delay hearings, and refusal to participate in the divorce proceedings. He stated that after the trial court denied Wife's motion for continuance on December 8, he heard Wife's attorney of record tell his counsel, "[d]on't work all weekend because I am going to file a Motion To Recuse."

When the case was called to trial on December 15, the trial court stated on the record that Wife's counsel "has already been granted one continuance in this matter," and that the filing of the motion to recuse was "dilatory in the extrem[e]." After considering the conflicting evidence as well as the actions of the predecessor judge, the trial court concluded in its written ruling on the motion for new trial that "it appears that the failure of either [Wife] or her counsel to appear on December 15 was a matter of some 'conscious indifference,' which calls into question the first prong of the *Craddock* test." It was within the discretion of the trial court to resolve conflicts in the evidence and to determine that the failure of Wife and her counsel to appear for trial was the result of intentional conduct or conscious indifference. *See Young v. Kirsch*, 814 S.W.2d 77, 81 (Tex. App.—San Antonio 1991, no writ) (no abuse of discretion to deny motion for new trial where conflicting evidence of conscious indifference presented). Because Wife did not meet her burden of proving the first prong of *Craddock*, we overrule her second issue.

In her third and fourth issues, Wife complains the trial court abused its discretion by failing to hold a hearing on one of Wife's motions for continuance and by denying the motion. The grant or denial of a motion for continuance is within the trial court's sound discretion. *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997). The denial of a motion for continuance will only be reversed if the trial judge's action was arbitrary, unreasonable, or

without reference to any guiding rules or principles. *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 843 (Tex. App.—Dallas 2008, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)).

Wife filed three motions for continuance of the trial setting. The first, filed in September, 2010, regarding an October 2010 trial setting, was granted. The motion cited several grounds, including Wife's illness, her newly-retained counsel, her counsel's scheduling conflict, and the need for additional discovery. The trial date was reset to December 15, 2010. The second motion was filed on December 8, and again cited Wife's illness as well as the need for further discovery. Wife concedes a hearing was held on this motion, evidence was presented, and her counsel was present. This motion was denied by the trial court. She now contends the denial of the December 8 motion was not an abuse of discretion because the motion (her own motion) was "fatally defective." She states the affidavits of her doctors submitted with the motion were not signed by the affiants and were not notarized. Therefore, she argues, the motion was defective and the trial court correctly denied it.

Wife filed a third motion for continuance on December 14, the day before the trial setting. This third motion alleged the same grounds as the December 8 motion, including Wife's illness and the need for further discovery. Unlike the affidavits supporting the December 8 motion, the affidavits accompanying the December 14 motion were signed and notarized. But the affidavits were made by the same doctors describing the same medical conditions as those presented to the trial court with the December 8 motion. Wife argues the trial court should have held a hearing on the December 14 motion and should have granted it because, unlike the December 8 motion, the December 14 motion was not fatally defective. Wife asserts that she established she was physically and mentally unable to participate in preparation of her case. She argues she was denied the right to be heard and the right to participate in trial.

–10–

As support for her position, Wife relies on *Burke v. Scott*, 410 S.W.2d 826 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.). In *Burke*, the court of appeals held the denial of the defendant's motion for continuance was an abuse of discretion where the defendant established that both he and his only witness were critically ill and unable to attend trial. *Id.* at 828. The motion was supported by the affidavits of two doctors. *Id.* This Court, however, has previously distinguished *Burke*. *See Humphrey v. Ahlschlager*, 778 S.W.2d 480, 484 (Tex. App.—Dallas 1989, no writ). In *Humphrey,* we explained that, in *Burke,* an attempt was made to depose the defendant even though he was seriously ill and bedridden. We noted that the motion in *Burke* set out the facts to which the defendant and his key witness would testify at trial. *Id.* Absent these facts, we held the trial court did not abuse its discretion in denying Humphrey's motion for continuance. *Id.*

Here, as in *Humphrey*, Wife's motion for continuance does not state when or if she will ever be available to testify. *See id.* The motion does not describe the substance or materiality of the testimony she would offer, or the due diligence undertaken to procure the testimony. *See id.* at 483–84. And although the trial court did not hold a hearing on the December 14 motion for continuance, it considered the same grounds—Wife's illness and her inability to assist in preparation for trial—in an evidentiary hearing only the week before. Further, the court had granted an earlier motion for continuance on the same grounds. We conclude the trial court did not abuse its discretion by denying Wife's December 14 motion for continuance without holding a second hearing. We overrule Wife's third and fourth issues.

In her fifth issue, Wife contends the trial court erred by failing to disqualify Husband's attorneys. As with Wife's previous issues, we review the denial of a motion to disqualify for an abuse of discretion. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002). Disqualification is a severe remedy. *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990).

Courts "must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic." *Id.* The burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules. *Id.* Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard. *Id.* A party who does not file a motion to disqualify opposing counsel in a timely manner waives the complaint. *See Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex. 1994). The untimely urging of a disqualification motion lends support to any suspicion that the motion is being used as a tactical weapon. *Id.*

Wife did not file her motion to disqualify until June 23, 2011, six months after the first judgment was entered. At that time, Wife's first motion for new trial had been denied, and Wife's second motion for new trial, directed to an amended decree entered on April 15, 2011, was pending. The trial judge heard the motion to disqualify on July 5, 2011, and issued a written ruling denying the motion on July 8, 2011.

The evidence offered at the hearing on the motion to disqualify showed that on May 26, 2010, Wife met with Melinda Eitzen, an attorney with the firm of McClure Duffee & Eitzen LLP, and that Eitzen entered an appearance as Wife's counsel on June 3, 2010. Attorney Aimee Pingenot was employed by Eitzen's firm from June 3, 2010 to August 2, 2010. Billing records from Eitzen to Wife showed two time entries, totaling one and a half hours, for Pingenot. The first entry, dated June 30, 2010, references interviews conducted with "business valuation experts." The June entry appeared on a bill dated July 7, 2010 and Pingenot was identified by name as a timekeeper on this bill. The second entry, dated July 29, 2010, was to review and revise the motion to withdraw. The July entry appeared on the bill dated August 9, 2010. These bills were sent to Wife.

Pingenot accepted a position with Goranson Bain, the firm representing Husband, on June 29, 2010, and informed Eitzen of the acceptance on July 2, 2010. On August 2, 2010, Eitzen withdrew from representing Wife, and on August 9, 2010, Pingenot began work with Goranson Bain. Wife contends she did not learn Pingenot was working for Goranson Bain until June 22, 2011. On that date, Cathy Threadgill, a former employee of Eitzen's firm, was assisting Wife with an inventory and appraisement in support of Wife's motion for new trial. Threadgill recognized Pingenot's name on the two invoices and recalled that Pingenot had left Eitzen's firm to work for Goranson Bain.

The testimony elicited at the hearing on Wife's motion to disqualify showed that both Eitzen's firm and Goranson Bain had attempted to identify potential conflicts arising from Pingenot's employment prior to Pingenot's commencement of work for Goranson Bain. Both firms identified a conflict involving Pingenot's work for another client, and Pingenot did not commence work at Goranson Bain until the case involving the conflict had ended. Both Eitzen and Thomas Greenwald, the Goranson Bain attorney representing Husband, testified that no conflict involving Pingenot and the Litmans' divorce proceedings was identified by either firm. Another associate attorney at Eitzen's firm was actively working on the file, not Pingenot. Although Eitzen stated that confidential information would have been imparted to Pingenot in order to interview business valuation experts, Greenwald testified the parties ultimately agreed to hire one expert to do a joint appraisal, so no confidential information would be divulged by either party in the course of hiring the expert. Pingenot did not dispute the accuracy of the time entry, but recalled nothing about it; knew nothing about Husband's case at Goranson Bain; and testified consistent with Eitzen that all clients on whose files she had worked while at Eitzen's firm were notified by letter of her departure from the firm, and that because she had not worked on Wife's case, Wife was not sent such a letter.

In her motion to disqualify Goranson Bain, Wife alleged a violation of Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct, which provides that "[w]ithout prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if it is the same or a substantially related matter." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a)(3), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West Supp. 2012) (TEX. STATE BAR R. art. X,§ 9). Wife contends that Pingenot personally represented Wife by working on her case, requiring disqualification of Goranson Bain.

In his written decision on the motion to disqualify, the trial judge noted "the incredibly insignificant amount of work performed by Ms. Pingenot" as well as "the decided lack of any credible testimony from either side that Ms. Pingenot either did or could have acquired any information, confidential or otherwise, about the Litman case" over the two months the firm represented Wife. The trial judge acknowledged that under *In re Columbia Valley Healthcare System, L.P.*, 320 S.W.3d 819, 824 (Tex. 2010), "[i]f the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during representation." The trial judge also acknowledged that under *Columbia Valley*, a second irrebuttable presumption arises that when the lawyer moves to a second firm and the second firm is representing the opposing party in ongoing litigation, the lawyer will share the confidences with members of the second firm, requiring disqualification of the second firm. *Id.* But the trial judge rejected the application of this "double imputed disqualification" principle "to a case with these facts." As noted above, Wife was required to establish with specificity a violation of one or more of the disciplinary rules; here, that Pingenot "personally . . . formerly represented" Wife for purposes of Rule 1.09. The trial judge's ruling indicates that he found "at most a remote possibility of a violation of the disciplinary rules," insufficient to establish disqualification under

–14–

*Spears*. *See Spears*, 797 S.W.2d at 656. Comment 2 to Rule 1.09 explains, "[w]hether such a personal attorney-client relationship existed involves questions of both fact and law that are beyond the scope of these rules." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09 cmt. 2.

The trial judge also found two other "significant differences" between *Columbia Valley* and this case. First, he noted that Wife "by her own volition" chose not to participate in the trial and "did not substantially engage in or respond to proffered discovery during any time prior to the trial on December 15, 2010." Second, he concluded that Wife, an attorney herself, could have discovered the grounds for her motion "by an exercise of diligence" before trial, or at least before the time her motion for new trial was filed and the amended decree was entered. The trial court's written ruling states, "[a]ccordingly, the Court finds that [Wife] waived, by her inaction, any complaint she may have had." The trial court also noted that Wife "voluntarily absented herself" from trial, and cited her "eleventh hour unsuccessful attempt to disqualify/recuse the Trial Judge from the case."

Given all of the circumstances in this case, we conclude the trial court did not abuse its discretion by denying Wife's motion to disqualify Goranson Bain. Acting "with reference to guiding rules and principles," the trial court could have concluded that the denial of Wife's motion to disqualify was warranted by Wife's previous actions to delay trial and ultimate default, the absence of evidence that Pingenot personally represented her, and waiver due to Wife's lack of diligence in reviewing billing records specifically naming Pingenot. *See Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (unexplained seven-month delay in seeking disqualification of attorney based on alleged conflict of interest was sufficient to establish waiver; trial court acted within its discretion to deny motion to disqualify); *see In re J.P.*, 365 S.W.3d at 836. We overrule Wife's fifth issue.

We affirm the trial court's judgment.


/Molly Francis/
MOLLY FRANCIS
JUSTICE


110903F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDRA S. LITMAN, Appellant

No. 05-11-00903-CV     V.

CRAIG LITMAN, Appellee

On Appeal from the 254th Judicial District Court, Dallas County, Texas

Trial Court Cause No. DF10-01069.

Opinion delivered by Justice Francis, Justices O'Neill and Murphy participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellee Craig Litman recover his costs of this appeal from appellant Andra S. Litman.

Judgment entered this 15th day of May, 2013.

/Molly Francis/

MOLLY FRANCIS
JUSTICE