**Affirmed and Memorandum Opinion filed April 26, 2016.**



In the

# Fourteenth Court of Appeals

## NO. 14-14-00968-CV

## IN THE INTEREST OF J.O.A., A CHILD

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1999-44585**

## M E M O R A N D U M   O P I N I O N

This is an appeal from the trial court's SAPCR[1] order granting a conservatorship and child support modification in favor of appellee A.A., the father of J.O.A., a child. Appellant A.S.A., the mother of J.O.A., contends the trial court erred by awarding custody to Father, denying Mother's motion for new trial, and denying Mother's motion for continuance. Mother further argues that the

---

[1] Under the Texas Family Code, a suit affecting the parent-child relationship or SAPCR is defined as a suit "in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." Tex. Fam. Code Ann. § 101.032(a) (West 2014).

evidence was legally and factually insufficient to support the trial court's judgment. We conclude that the trial court did not commit any abuse of discretion and therefore affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In August 1999, the Attorney General filed a petition to determine parentage, conservatorship, and child support for J.O.A, born in February 1997. In November 1999, the trial court signed an agreed order establishing the parent-child relationship. Father and Mother were named joint managing conservators. Mother was designated the conservator with the exclusive right to determine the child's primary residence. The child's primary physical residence was with Mother, and Father was awarded periods of possession and ordered to pay monthly child support to Mother for the benefit of J.O.A.

In October 2012, Mother filed a petition to modify the parent-child relationship.[2] Mother sought increased child support based on a variance from the child support guidelines. Mother also alleged that the child would require substantial care and personal supervision because of a mental or physical disability and would not be capable of self-support; Mother requested that support payments continue after J.O.A.'s 18th birthday and be extended for an indefinite period.

Father answered and filed a counterpetition to modify the parent-child relationship. Father asserted that J.O.A. would express to the trial court the child's preference of the person who would have the exclusive right to designate the primary residence. Father requested that he be appointed as the person who has the right to designate the primary residence of the child. Father alleged the previously-

---

[2] In July 2012, the Office of the Attorney General filed a suit for modification of support order. The Attorney General then filed a notice of nonsuit, which the trial court signed in October 2012.

ordered child support should be decreased based on a variance from the guidelines.

The record reflects that Mother appeared pro se during the proceedings to establish the parent-child relationship. During the modification proceedings, Mother filed her petition to modify and entered into a mediated settlement agreement by and through an attorney. Mother entered into a rule 11 agreement to reset trial pro se. Mother later made additional pre-trial filings through a different attorney.[3]

Trial was preferentially set for August 29, 2014. The record reflects that at approximately 4:00 p.m. on August 28, 2014, someone with the law group with which the different attorney was affiliated filed a cover letter supposedly attaching a "Doctor's Excuse of Absence on behalf of Petitioner's Counsel for tomorrow's proceedings." The record only contains the cover letter.

At the beginning of trial on August 29, 2014, counsel for Father identified herself. The Assistant Attorney General announced present.[4] Counsel for Mother did not appear. Mother stated that she was a party but her "lawyer is not here" and she "do[es] not know how to represent [her]self." The record reflects:

> THE COURT: For purposes of the record, the court received a call from someone yesterday who would only identify themselves as a personal assistant to a person who has filed pleadings in this case but who has never entered an appearance as a lawyer, and that is the person who purports to represent [Mother]. They were told that, in order to call in with a medical need on a preferentially set trial, we needed a letter from a doctor and specific details about what the issue was, and we have received neither.
>
> Because this is a preferentially set case, the court is proceeding to trial.

---

[3] This attorney also represents Mother on appeal.

[4] In her brief, Mother claims that Father invited the Attorney General. The Assistant Attorney General also appeared at the hearing on the motion for new trial.

3

Thank you folks. You can be seated.

[FATHER'S COUNSEL]: In the court there was something filed at 4:00 o'clock. We didn't get notice of it. We just happen[ed] to be looking online about 6:00 last night, but there is something from opposing counsel that has been filed, but it does not detail anything, Your Honor.

THE COURT: There is something from the [] Law Group that was filed with the court, but it gives no details about what the situation is, or why the person is incapable of participating in a preferentially set trial, so the court is proceeding to trial.

In addition, the record reflects that the trial court denied Mother's "oral motion for continuance":

[MOTHER]: Your Honor, I cannot do anything because I am not representing myself.

THE COURT: Okay. Well you don't have to participate, if you don't want to, but you're the person who initiated the lawsuit.

[MOTHER]: Yeah, but my lawyer is sick.

THE COURT: Well your lawyer has never filed an appearance for you. She filed some pleadings, but she has never entered an appearance for you that I can tell.

[MOTHER]: Your Honor, we have been to the court like two or three times, and it's been moved, or changed, so this is my first time in this place.

THE COURT: I don't know what you're asking me today.

[MOTHER]: What I am asking, Your Honor, if it can be reset because I cannot represent myself, and my witnesses are not here because I told them, you know, my lawyer is sick, and I can't go alone.

THE COURT: [Father's counsel], when was the motion to modify filed?

[FATHER'S COUNSEL]: On, Your Honor, this was filed in 2012. We are preferentially set. My Counterpetition was filed December of 2012. This was filed 10-10 of 2012. Ours was filed December 17th, 2012. After we received a copy of the motion to modify, we filed our Counterpetition. This case has been on file. Opposing counsel and I

4

had put it on the preferentially set docket, and I represent to the court that I have received no courtesy call, or anything from their office, and we spoke to their office at least three times yesterday, and no one in her office had advised us of anything like this.

THE COURT: So no one in your office, even though you talked, told you she was sick or not going to be here?

[FATHER'S COUNSEL]: Nothing at all. And my paralegal spoke with them, and she can testify to the court, if need be.

THE COURT: And the docket sheet indicates there has been a number of hearings, including three discovery hearings. The Petitioner herself has indicated that there have been a number of hearings before the court. It is preferentially set. The oral motion for continuance is denied.

Do you have any witnesses to call, ma'am?

[MOTHER]: No.

Father's counsel called Father to testify. After Mother spoke out of turn, the trial court admonished her: "You may not speak from counsel table. I will give you a complete opportunity to testify in your own behalf, if you want to; although you have told me you didn't want to." Mother then left the courtroom:

THE COURT: Let me ask you, [Father's counsel], to—hang on just a second. For purposes of the record, the Petitioner left the courtroom. So that the record is clear as to why the court proceeded in this manner in the absence of counsel, there are in excess of 100 entries since the date of filing of this motion to modify in this case. This has been a contentious case, there have been a number of appearances, and at l[e]ast one reset of a preferentially set trial.

The court believes in the best interest of the child that, under the circumstances, it must proceed to trial in this case, despite our request yesterday, through the coordinator of counsel for the Petitioner, that the court, at least, be provided with very specific information as to what the medical issue is and what the circumstances were that would justify a reset of a preferential setting.

The court simply got a one-page note that basically says she can't work until September the 1st. There is no other indication on

5

that correspondence to the court as to what the nature is of the medical issue and why that medical issue would prevent her from participating in this preferentially set trial when, as is testified to one of the parties, was already here from out of state.

Additionally, no motion for continuance was on file, or filed even in an emergency situation, no representative of the lawyer was sent to the court to ask the court for a continuance, no courtesy call was made to either of the other two lawyers in this case letting them know that she did not intend to appear.

So the court feels compelled again, based on the circumstances and best interest of the child, to move forward on this trial and does want the record to reflect that the Petitioner has left the courtroom and, it appears, taken her things.

Trial continued. Mother later returned to the courtroom.

Father provided testimony regarding Mother's "frequent" moves, approximately eight moves since 2006. Father stated that this "instability" and Mother's "alienating [him] from the child" was causing J.O.A.'s "behavior problems." Father described multiple instances where Mother denied Father his visitation rights. Father presented several unclaimed letters he wrote to Mother regarding his failed attempts to visit the child. Father also wrote the Office of the Attorney General regarding his inability to contact Mother and visit J.O.A. Even after the parties entered into a mediated settlement agreement in June 2013 and Father arranged airplane tickets for J.O.A. to visit him in Boston, Mother did not allow the visit. J.O.A. graduated from high school in May 2014, and Father started a college fund for him and anticipated helping him attend college in Boston. Father presented Mother's 2011 and 2012 tax returns and testified regarding the attorney's fees he had incurred. Father rested.

The trial court then offered Mother the opportunity to cross-examine Father, but she stated that she could not continue without her lawyer. The trial also asked Mother whether she wished to make a statement to the court; she again stated she

6

could not continue without her lawyer. Father's counsel testified as to her reasonable and necessary attorney's fees. The trial court asked Mother whether she had any questions of Father's counsel, and she stated she could not continue without her lawyer.

The trial court signed an order on September 5, 2014, granting Father's requested modification in the best interest of the child. The SAPCR order appointed Father sole managing conservator of J.O.A. (who had not yet turned 18) and appointed Mother possessory conservator. Mother was ordered to pay monthly child support to Father in accordance with the guidelines and attorney's fees to Father's counsel. The trial court also ordered Mother's income to be withheld for child support and terminated the original order withholding Father's income.

On October 1, 2014, Mother filed a motion for new trial, as well as a motion to terminate the wage withholding order. Mother alleged that she has a meritorious defense and that Father would not be injured by the granting of a new trial. Mother included various affidavits concerning the events of August 27 through 29. Father filed a response in which he alleged that granting a new trial would injure him. Father further alleged that Mother's counsel failed to appear, never filed a motion for continuance, never provided a sufficient doctor's note detailing why she could not appear for trial as requested by the trial court, and failed to have another attorney appear in her place. After a hearing, the trial court denied the motion for new trial. Mother timely appealed.

## II.    ANALYSIS

### A. Conservatorship

In her first issue and as part of her fourth issue, Mother argues that the trial

court erred with regard to its determination of custody. Because J.O.A. turned 18 in February 2015, these portions of Mother's appeal are moot. *See* Tex. Fam. Code Ann. § 101.003 (West 2014); *In re D.M.*, No. 04-14-00858-CV, 2015 WL 3398379, at *1 n.1 (Tex. App.—San Antonio May 27, 2015, no pet.) (mem. op.); *K.E.M. v. Tex. Dep't of Family & Protective Servs.*, No. 03-14-00753-CV, 2015 WL 1143016, at *1 (Tex. App.—Austin Mar. 11, 2015, no pet.) (mem. op.); *In re E.H.*, No. 2-07-343-CV, 2008 WL 2404490, at *1 & n.2 (Tex. App.—Fort Worth June 12, 2008, no pet.) (mem. op.) (per curiam).

Beyond conservatorship, however, the trial court's order implicates financial obligations that accrued prior to the child's 18th birthday, including attorney's fees and the amount of previously-accrued child support. Therefore, a live controversy remains to such extent, and we proceed to analyze the remainder of Mother's issues. *See Medrano v. Zapata*, No. 03-12-00131-CV, 2013 WL 6921500, at *4 (Tex. App.—Austin Dec. 31, 2013, no pet.) (mem. op.).

## B. Motion for new trial

In her second issue, Mother contends that the trial court abused its discretion when it denied her motion for new trial.

Mother first argues that *Alexander v. Smith*, 49 S.W. 916 (Tex. Civ. App.—Galveston 1899, no writ), controls. However, *Alexander* is distinguishable. There, plaintiff's counsel, who had been seriously ill, in another county, and unable to come to court when the case was called for trial, filed a motion the very next day to set aside the judgment dismissing plaintiff's personal injury lawsuit for want of prosecution. *Id.* at 916. Plaintiff also filed a motion for new trial; the defendant did not dispute the allegations contained in the motion. *Id.* at 917. Moreover, in finding the trial court abused its discretion in overruling the motions, the court of appeals found it particularly significant that, if the cause were not reinstated, "the

statute of limitations would blot it out forever." *Id.*

Here, Mother filed her motion for new trial more than a month after Mother's counsel did not appear at the trial. Father responded, disputing Mother's allegations surrounding Mother's counsel's absence. Finally, Mother filed her petition to modify in large part to obtain support beyond J.O.A.'s 18th birthday. Nothing prevents Mother from filing another suit for modification and prevailing if she is able to meet her burden to show the circumstances have materially and substantially changed based on a mental or physical disability that existed or the cause of which was known to exist on or prior to J.O.A.'s 18th birthday. *See* Tex. Fam. Code Ann. §§ 154.001(a)(4), 154.302, 156.401(a)(1) (West 2014 & Supp. 2015); *In re J.M.W.*, 470 S.W.3d 544, 550 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A suit to obtain support for an adult disabled child may be filed at any time, regardless of the child's age, and may be filed as a suit for modification as provided by chapter 156." (citing Tex. Fam. Code Ann. § 154.305(a)(1), (c)).

Next, Mother argues that she meets the requirements set out in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939), entitling her to a new trial. Assuming without deciding that the *Craddock* test applies in these circumstances where Mother appeared but Mother's counsel failed to appear for a preferential trial setting and a bench trial on the merits then took place,[5] we cannot conclude that the trial court abused its discretion by denying Mother's motion for new trial because Mother failed to satisfy the first element of *Craddock*.

---

[5] Courts have held that *Craddock* does not apply where the party's attorney—but not the party—appears and a trial takes place on the merits because there is no default. *See LeBlanc v. LeBlanc*, 778 S.W.2d 865, 865 (Tex. 1989) (per curiam); *C.B. v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00833-CV, 2013 WL 1567469, at *2 (Tex. App.—Austin Apr. 11, 2013, no pet.) (mem. op.); *Velasco v. Ayala*, 312 S.W.3d 783, 791 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *In re K.C.*, 88 S.W.3d 277, 279 (Tex. App.—San Antonio 2002, pet. denied).

Under the *Craddock* test, a party moving for new trial following a no-answer or post-answer default judgment must satisfy three elements: (1) the failure to answer or appear was not intentional or the result of conscious indifference but was due to a mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) the motion is filed at such time that granting a new trial would not result in delay or otherwise injure the plaintiff. *Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) (citing *Craddock*, 133 S.W.2d at 126). We do not disturb the trial court's ruling on a motion for new trial in the absence of a showing that the court abused its discretion. *Id.*; *In re J.R. III*, No. 05-14-00338-CV, 2015 WL 4639625, at *2 (Tex. App.—Dallas Aug. 5, 2015, no pet.) (mem. op.) ("A trial court abuses its discretion by denying a motion for new trial if the defaulting party satisfied all three elements of the *Craddock* test."). We "look to see if the trial judge abused his discretion in denying [the defaulting party's] motion for new trial in view of the record before him at that time." *Freeman v. Pevehouse*, 79 S.W.3d 637, 646 (Tex. App.—Waco 2002, no pet.) (internal quotation marks omitted).

Under the first prong of the *Craddock* test, the trial court considers the knowledge and acts of the defaulting party to determine whether the failure to appear was due to intentional disregard or conscious indifference. *See Evans*, 889 S.W.2d at 269. If, based on a review of the entire record, the facts set out in the motion for new trial and supporting affidavits are controverted, this determination is a fact question for the trial court. *See id.*; *Litman v. Litman*, 402 S.W.3d 280, 286 (Tex. App.—Dallas 2013, pet. denied).[6] In acting as fact-finder, the trial court

___

[6] Mother contends that Father failed to controvert any of the allegations in her motion for new trial and her affidavit. There is no requirement, however, that Mother's affidavits "be controverted only by counter affidavits or that the trial court ignore any other evidence." *Freeman*, 79 S.W.3d at 646. Although Father did not file any counteraffidavits, he particularly disputed in his response whether Mother's counsel provided a sufficiently detailed doctor's note

resolves conflicts in the evidence and is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Litman*, 402 S.W.3d at 286; *Freeman*, 79 S.W.3d at 646.

Although not expressly stated in her motion for new trial, Mother takes the position that her counsel's failure to appear was neither intentional nor the result of conscious indifference. Conscious indifference includes "the failure to take some action which would seem indicated to a person of reasonable sensibilities under the same or similar circumstances." *Young v. Kirsch*, 814 S.W.2d 77, 81 (Tex. App.—San Antonio 1991, no writ). A trial court can reasonably believe, based on contradictory evidence, that there was intentional or consciously indifferent conduct on the part of the defaulting party instead of an accident or mistake. *See Litman*, 402 S.W.3d at 286 (citing *Young*, 814 S.W.2d at 81); *Freeman*, 79 S.W.3d at 647.

As reflected in the affidavits attached to Mother's motion, Mother's counsel began feeling poorly on August 27, two days prior to the preferential trial setting, during trial preparation with Mother. That evening, Mother's counsel knew she was having another "unbearable" "fibroids attack" that "always keeps her off her feet." Mother's counsel usually treats these attacks with bed rest.

On August 28, Mother's counsel did not come into work for trial preparation. She did not inform her staff about her condition. Mother's counsel went to a medical clinic. She did not meet with Mother or Mother's witnesses. Father's counsel's paralegal or assistant called Mother's counsel's office about 2:30 p.m. regarding a fax. Mother's counsel's paralegal assigned to Mother's case took the call but did not tell Father's counsel's paralegal anything about Mother's counsel's illness because he did not know.

describing why she could not appear as requested by the trial court.

11

After she was put on bed rest and left the clinic, Mother's counsel directed her "personal assistant" to obtain a doctor's note, e-file it, contact Father's counsel and the trial coordinator, and get one of Mother's counsel's colleagues to stand in for her and request a continuance. Mother's counsel's assistant obtained a doctor's note, which Mother's counsel's paralegal e-filed at 4:00 p.m. The note "did not contain details about her illness given that her assistant was going to 'e-file' it and not hand-deliver it to the Judge." Mother's counsel's assistant attempted but was unable to reach Father's counsel by phone. The assistant called the trial coordinator to inform her that Mother's counsel would not appear in court. The trial coordinator "insisted" on more details about the illness. The assistant did not know the details and directed the coordinator to call Mother's counsel's doctor. The assistant called several family law practitioners but could not confirm that anyone would appear on behalf of Mother to request a continuance. The assistant spoke with Mother's counsel's husband and informed him that the trial coordinator wanted details about the illness and that he was unable to get another lawyer to appear. Mother's counsel's husband called another lawyer, but he was unable to appear.

On August 29, after 8:00 a.m., the husband spoke with a "lady in Court 257" about his wife's fibroids attack and her inability to attend trial and to find a lawyer to stand in for her. After trial had begun, Mother called her counsel and awakened her at about 10:00 a.m. Mother's counsel then called the trial coordinator and attempted to provide details about her "fibroid issues." The coordinator stated that "all [Mother's counsel] put on [the filing] was you weren't going to be here." The coordinator informed Mother's counsel that it was "up to" the judge to consider what she had filed and that the judge had proceeded with the trial.

At trial, Mother told the trial court multiple times that her lawyer was "sick."

12

Father's counsel indicated that the document filed at 4:00 p.m. on August 28 did "not detail anything." The trial court stated that the filing gave no details about the situation and did not explain "why the person is incapable of participating in a preferentially set trial." Father's counsel also informed the court that she received no courtesy call and was not advised that Mother's counsel was sick or would not appear despite her staff speaking with Mother's counsel's office at least three times on August 28. The trial court further stated that, despite its request to Mother's counsel's "coordinator," the only correspondence received failed to provide specific information as to the medical issue and circumstances to justify resetting a preferential trial. The court further noted that no emergency motion for continuance was filed, no representative of Mother's counsel was sent to request a continuance, and no courtesy calls were made to the other lawyers on the case.

At the hearing on the motion for new trial, the trial court inquired why Mother's counsel did not contact Father's counsel or the Attorney General's office early in the day on August 28 to inform them "there might be some issue" when she knew that trial had been preferentially set for several months and when she knew that Father was coming in from Massachusetts. Mother's counsel protested that she "was in great pain, [and] was in no shape or form to call anybody." The trial court also continued to express its concerns related to the lack of details about Mother's counsel's "sickness":

> The only thing the court was tendered on the day of trial was a note dated the day before that says that you were seen for evaluation and treatment. There's all kind of blank spaces for all kinds of explanations, there's nothing on there.
>
> [MOTHER'S COUNSEL]: On that day, if the court saw Exhibit Number 10, and I will direct the court to look at that now. [My doctor] said me called—my assistant was e-filing—
>
> THE COURT: Stop. This is a Motion for New Trial deciding whether

or not we acted appropriately on August 29th, and all I have on August 29th was your letter, that is basically blank, that says you were seen for evaluation and treatment of some unidentifiable issue, I guess.

[MOTHER'S COUNSEL]: And I didn't write that letter, Your Honor.

THE COURT: I understand you didn't, nor did you file a Motion for Continuance.

[MOTHER'S COUNSEL]: I didn't know it was going to happen, I wasn't planning to not appear.

The trial court specifically noted that nobody from Mother's counsel's office appeared to "say, oh, judge, by the way, we have all this information that we didn't want to e-file."

There is no dispute that Mother's counsel was aware of the August 29 preferential trial setting. More than a day before this preferential trial setting, Mother's counsel also knew that she was suffering from a fibroids attack—which likely would result in "bed rest"—but she failed to inform her own staff, much less Father's counsel, about this issue even though she knew Father was coming in from Boston. Even after the trial court specifically requested more details regarding Mother's counsel's inability to appear that would justify resetting the preferential trial setting, she failed to provide those details either in writing or through the appearance of a representative.

We conclude that the trial court as fact-finder reasonably could have determined that the cause of Mother's counsel's failure to appear was conscious indifference. *See Litman*, 402 S.W.3d at 286 (citing *Young*, 814 S.W.2d at 81); *Freeman*, 79 S.W.3d at 647. Therefore, the trial court did not abuse its discretion in denying Mother's motion for new trial as it reasonably could have found that Mother failed to satisfy the first prong of the *Craddock* test. *See In re J.R. III*, 2015 WL 4639625, at *4 (refusing to "second guess" trial court's discretion to

resolve fact question on conscious indifference).[7]

We overrule Mother's second issue.

## C. Motion for continuance

In her related third issue, Mother argues that the trial court erred by not granting a continuance.

Whether or not to grant a continuance is a question for the trial court's discretion. *Litman*, 402 S.W.3d at 286; *see* Tex. R. Civ. P. 253 (trial court has discretion to continue trial for absence of counsel); *Waste Water, Inc. v. Alpha Finishing & Developing Corp.*, 874 S.W.2d 940, 942 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (citing rule 253). If a motion for continuance is not verified or supported by affidavit, we presume that the trial court did not abuse its discretion by denying the motion for continuance. *See Finley v. Finley*, No. 02-11-00045-CV, 2015 WL 294012, at *11 (Tex. App.—Fort Worth Jan. 22, 2015, no pet.) (mem. op.) (per curiam) (citing Tex. R. Civ. P. 251); *Waste Water*, 874 S.W.2d at 941–42 (no abuse of discretion where motion for continuance recited absent counsel was too ill to fly for appearance and attached clinic documents but failed to include affidavit). It is undisputed that Mother's motion for continuance was "oral"; she did not file a verified motion for continuance or one supported by affidavit.

Mother acknowledges these requirements but argues that the trial court should have waived them here. Mother primarily relies on *Dolgencorp of Texas,*

---

[7] Although in the second issue within the issues-presented portion of her brief Mother also states that the trial court erred in denying her motion to terminate wage withholding order, she fails to provide any argument regarding this subissue in her argument section, much less cite or analyze any legal authority. By failing to adequately brief this subissue, Mother has waived it on appeal. *See* Tex. R. App. P. 38.1; *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

*Inc. v. Lerma*, 288 S.W.3d 922 (Tex. 2009) (per curiam), and *Aero Mayflower Transit Co. v. Spoljaric*, 669 S.W.2d 158 (Tex. App.—Fort Worth 1984, writ dism'd) (op. on reh'g). However, the Supreme Court of Texas in *Dolgencorp* and the Fort Worth court of appeals in *Aero Mayflower Transit* still required the absent counsel to meet *Craddock*. *Dolgencorp*, 288 S.W.3d at 925–26; *Aero Mayflower Transit*, 669 S.W.2d at 160. We already have determined that Mother failed to meet the first prong of *Craddock*.[8]

Moreover, we do not agree with Mother that *Farmers' Gas Co. v. Calame*, 262 S.W. 546 (Tex. Civ. App.—Waco 1924, no writ), compels a different result under these circumstances. *Cf. id.* at 547–48, 550 (trial court abused discretion in overruling motions for continuance and for new trial in circumstances where absent defendant's counsel notified opposing counsel of conflicting trial engagements, opposing counsel indicated it was amenable to reset, and absent counsel sent representative to present his verified motion for continuance to trial court).

Finding no abuse of discretion, we overrule Mother's third issue.

---

[8] Unlike here, in *Dolgencorp* and in *Aero Mayflower Transit*, the absent counsel met his burden to show that the failure to appear was not intentional or the result of conscious indifference. *See Dolgencorp*, 288 S.W.3d at 927–29 (counsel's associate informed original trial court in person at docket call about counsel's potentially conflicting preferential trial setting in another county; after case was transferred, associate again informed new trial court in person; new trial court had associate pick a jury but left impression that associate would not have to try case, that court would work around attorneys' schedules, and that jury would be "on call" for possible later setting; and county judge and trial coordinator, as well as associate and counsel's staff, called new trial court to say that counsel's other trial would not be concluded in time); *Aero Mayflower Transit*, 669 S.W.2d at 160 (counsel was appearing in conflicting criminal trial, opposing counsel had been placed on notice about conflicts, and secretary who was supposed to call and inform trial court about conflict and obtain reset mistakenly thought trial setting was later in morning than it actually was).

## D. Child support and attorney's fees

In her fourth issue, Mother contends that the evidence is legally and factually insufficient to support the trial court's judgment. Mother further argues that the judgment was a result of Father's "misrepresentations at trial, . . . combined with the erroneous order submitted to court by [Father's] counsel." Mother fails to specify any such alleged "misrepresentations." Mother argues that the judgment contains erroneous findings that she announced ready for trial, that no record was made, and that Father's monthly net resources are $0.

The trial court retains broad discretion in making the equitable decision of whether to modify a prior support order. *Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Accordingly, on appeal we will not disturb the trial court's ruling on a support order absent a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Friermood*, 25 S.W.3d at 760. Given such a standard, the legal and factual sufficiency of the evidence are not to be considered as independent grounds of error, but only as relevant factors in assessing whether the trial court did in fact abuse its discretion. *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004, no pet.). An abuse of discretion only occurs when the trial court acts without reference to any guiding rules or legal principles. *Worford*, 801 S.W.2d at 109; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). If there is some probative and substantive evidence to support the judgment, then there is no abuse of discretion. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The best interest of the child should be the trial court's primary consideration in determining whether to modify child support. *See* Tex. Fam. Code Ann. § 156.402(a) (West 2014).

Here, in his counterpetition, Father requested modification of child

support—a decrease in the amount of his support payments previously ordered. In addition, at trial, Father submitted a proposed parenting plan requesting that Mother pay monthly child support of $500.00 to him. He also submitted Mother's 2011 and 2012 tax returns.

We conclude that there is some probative and substantive evidence to support the trial court's order with regard to ordering and setting the amount of child support for J.O.A. The Family Code allows a trial court to modify a support order if circumstances have "materially and substantially changed" since the date of the order's rendition. *Id.* § 156.401(a)(1). Without reviewing the propriety of the modification order as to conservatorship because that portion of the appeal is moot, such a change in the child's conservatorship and primary residence would constitute a material and substantial change, which the trial court could have considered in modifying the child support provisions. *See In re V.L.K.*, No. 02-10-00315-CV, 2011 WL 3211245, at *3 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.) ("[A] change in custody of a child is, in and of itself, a material and substantial change."); *In re A.M.W.*, 313 S.W.3d 887, 891 (Tex. App.—Dallas 2010, no pet.) (same); *In re Doe*, 917 S.W.2d 139, 142 (Tex. App.—Amarillo 1996, writ denied) (when change in custody occurs, subsequent to agreed decree providing for conservatorship and support for child's benefit, obligation to continue making support payments to former custodial parent is excused); *Labowitz v. Labowitz*, 542 S.W.2d 922, 925 (Tex. Civ. App.—Dallas 1976, no writ) (father's appointment as managing conservator of children constituted material and substantial change requiring reallocation of financial obligations).

Moreover, if the amount of ordered child support does not substantially conform with the child support guidelines, the trial court may modify the order to conform with the guidelines if the modification is in the best interest of the child.

18

Tex. Fam. Code Ann. § 156.402(b) (West 2014). A child support payment in accordance with the guidelines is presumed to be in the best interest of the child. *Id.* § 154.122(a) (West 2014). Mother does not dispute that there was sufficient evidence of her own monthly net resources or that the trial court's award of monthly support substantially complies with the guidelines. *See id.* § 154.125 (West 2014 & Supp. 2015).

Any errors with regard to the trial court's findings do not render the judgment reversible because such errors probably have not caused the rendition of an improper judgment or prevented Mother from adequately presenting her appeal. *See* Tex. R. App. P. 44.1(a); *In re H.D.C.*, 474 S.W.3d 758, 769 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Error is harmful if it prevents an appellant from properly presenting a case to the appellate court."). This court has reviewed Mother's challenges to the trial court's denials of her motion for continuance and her motion for new trial based on the trial record. With regard to the $0 finding, a trial court is not required to provide a finding on the amount of the obligee's monthly net resources where no party requests it and the amount of support ordered does not vary from the amount computed by applying the guidelines. *See* Tex. Fam. Code § 154.130(a) (West 2014). On this record, which sufficiently supports the order that Mother pay Father monthly support and setting the amount of such support in substantial compliance with the guidelines, any error with regard to making this finding was harmless. *See Walker v. Walker*, No. 02-13-00229-CV, 2014 WL 2619147, at *4 (Tex. App.—Fort Worth June 12, 2014, pet. denied) (mem. op.); *Friermood*, 25 S.W.3d at 761.

Finally, we consider whether the trial court abused its discretion in ordering Mother to pay attorney's fees to Father's counsel. The trial court enjoys broad discretion in determining whether to award attorney's fees in a SAPCR. *See* Tex.

19

Fam. Code Ann. § 106.002 (West 2014); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996); *In the Interest of J.M.W.*, 470 S.W.3d at 549. Testimony from Father and Father's counsel indicated that the total in attorney's fees was approximately $35,000 and Father still owed his counsel about $14,000. Father submitted a billing statement for $22,538.86 in attorney's fees reflecting that he had paid his counsel $15,000 and owed a balance of $7,538.86. In light of the record before the trial court and the deferential standard of review, we cannot conclude that the trial court abused its discretion by awarding Father's counsel $7,500.00 in attorney's fees.[9]

We overrule Mother's fourth issue.

### III.  CONCLUSION

Accordingly, we affirm the trial court's judgment.

/s/    Marc W. Brown
Justice

Panel consists of Justices Boyce, Busby, and Brown.

---

[9] Mother does not dispute the reasonableness or necessity of Father's attorney's fees.